**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>24 HOUR FITNESS WORLDWIDE, INC., *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20–11558 (KBO)<br><br>Jointly Administered<br><br>**Related Docket No. 21**<br>**Objection Deadline: June 23, 2020 at 4:00 p.m.** |

**LIMITED OBJECTION OF US VI DOWNEY, LLC TO MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING PROCEDURES FOR REJECTING UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF**

US VI Downey, LLC ("Downey"), by and through its undersigned counsel, hereby files this limited objection (this "Limited Objection") to the *Motion of Debtors for Entry of Order (I) Approving Procedures for Rejecting Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [Docket No. 21] (the "Rejection Motion")[2] and, in support thereof, respectfully states as follows:

1.      Downey is the successor-in-interest to that certain *24 Hour Fitness Lease*, dated February 25, 2015, as amended, between the applicable lessors and debtor 24 Hour Fitness USA, Inc. (the "Debtor"), as lessee (as amended and supplemented from time to time, the "Lease") for premises located at The Promenade at Downey, Downey, California.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are 24 Hour Holdings II LLC (N/A); 24 Hour Fitness Worldwide, Inc. (5690); 24 Hour Fitness United States, Inc. (8376); 24 Hour Fitness USA, Inc. (9899); 24 Hour Fitness Holdings LLC (8902); 24 San Francisco LLC (3542); 24 New York LLC (7033); 24 Denver LLC (6644); RS FIT Holdings LLC (3064); RS FIT CA LLC (7007); and RS FIT NW LLC (9372). The Debtors' corporate headquarters and service address is 12647 Alcosta Blvd., Suite 500, San Ramon, CA 94583.

[2] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Rejection Motion.

2.      On June 15, 2020, the Debtors filed the Rejection Motion seeking the Court's approval of rejection procedures for unexpired nonresidential real property leases. A hearing on the Rejection Motion is scheduled for June 29, 2020.

3.      Pursuant to paragraph 13 of the Rejection Motion, the proposed effective date of rejection of leases or subleases (*i.e.*, the "Rejection Date") is:

> (i) **the earlier of** (a) service of the Rejection Notice, and (b) the Debtors' unequivocal surrender of the leased premises via the delivery of the keys, key codes, and alarm codes to the premises, as applicable, to the applicable lease counterparty, or, if not by delivering such keys and codes, then by providing notice that the landlord may re-let the premises or (ii) as otherwise agreed by the Debtors and the applicable lease counterparty.

Rejection Motion at ¶ 13 (emphasis added).

## Limited Objection

4.      Downey generally does not object to the proposed rejection procedures. But it does take issue with the Rejection Date being the *earlier* of service of the Rejection Notice and surrender. Rather, at a minimum, the Rejection Date should be the *later* of those two events. And preferably, the Rejection Date should be effective as of the date of the order entering such relief.

5.      "The decision to grant retroactive rejection of a lease or contract is dictated by equitable considerations." *In re Phila. Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010). "In most cases a lease will be considered rejected as of the date of entry of the order approving the rejection." *In re O'Neil Theatres*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000). "Only in exceptional circumstances . . . will the court adopt a retroactive date." *Id.* (allowing retroactive rejection to debtor's petition date where lessee had taken clear steps to surrender leased property before petition date and landlord accepted the same).

6.      This Court has been very clear on the standard for granting *nunc pro tunc* rejection:

> A bankruptcy court may when principles of equity so dictate approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date. The power to grant relief retroactively is derived from the bankruptcy's equitable powers to insure a fair outcome. An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only after a balancing of the equities in a particular case. It is the burden of the moving party to show that relief, of this character, is appropriate.

*TW, Inc. v. Angelastro (In re TW, Inc.)*, 2004 U.S. Dist. LEXIS 671, 5-6 (D. Del. Jan. 14, 2004) (internal citations and alterations omitted) (emphasis added); *see also In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("[T]he bankruptcy court has discretion to approve a rejection of a nonresidential lease pursuant to § 365(a) retroactive to the motion filing date, *when principles of equity so dictate*."); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) ("Rejection has been allowed *nunc pro tunc* to the date the Motion is filed or the premises is surrendered, whichever is later, *only in certain circumstances*.").

7.      Here, equity requires that the rejection procedures, if approved, be effective only as of the date of the order granting such relief, or at least upon the later of service of the Rejection Notice and surrender of the premises.  The intent of the Debtors is clear: they are seeking retroactive effectiveness of the rejection in order to avoid having to pay rental amounts due under the leases.  At the same time, landlords are unable to re-let their properties unless and until the Court enters an order rejecting the leases because the leases will still technically be in effect.  As a result, while in this limbo, landlords will lose the significant monthly rental income to which they are otherwise entitled under their leases.

8.      The Debtors also seek via the Motion authority to abandon *De Minimis* Assets. While Downey appreciates the language allowing landlords to dispose of the property without notice or liability, the language doesn't quite go far enough.  Rather, additional language should be added protecting the landlords to the extent that the personal property is not owned by the Debtors, is hazardous, or has personally identifiable information.  For example, Downey suggests the following be added where appropriate, or words of similar effect, to the proposed Order:

> Notwithstanding any other provision of this Order, (A) the Debtors may not abandon any personal property that is not property of the Debtors or property of the landlord of the location at which such personal property is abandoned, (B) the Debtors are not authorized to abandon, and are directed to remove, any hazardous materials as defined under applicable law from any leased premises as and to the extent they are required to do so by applicable law, and (C) to the extent the Debtors seek to abandon personal property that contains any "personally identifiable information," as that term is defined in section 101(41A) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual (the "Confidential Information"), the Debtors shall remove the Confidential Information from such personal property before abandonment.

**Joinder**

9.      Downey joins in the objections to the Debtors' requested relief filed by other landlords and parties-in-interest to the extent they are not inconsistent with the Objection.

**Reservation of Rights**

10.      Nothing in this Limited Objection is intended to be, or should be construed as, a waiver by Downey of any of its rights under the Lease, the Bankruptcy Code, or applicable law. Downey expressly reserves all such rights, including, without limitation, the right to: (i) supplement and/or amend this Limited Objection and to assert objections to the proposed

4

assumption, assumption and assignment, or rejection of the Lease on any and all grounds; (ii) assert and amend any cure amounts; (iii) assert all monetary and non-monetary defaults under the Lease; (iv) assert any rights for indemnification or contribution against the Debtor arising under the Lease; and (v) assert any further objections as it deems necessary or appropriate.

<strong>Conclusion</strong>

WHEREFORE, Downey respectfully requests that this Court enter an order: (i) sustaining this Limited Objection; and (ii) granting Downey such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: June 23, 2020
     Wilmington, Delaware

DUANE MORRIS LLP

*/s/ Jarret P. Hitchings*
Jarret P. Hitchings (DE 5564)
222 Delaware Avenue, Suite 1600
Wilmington, DE  19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: jphitchings@duanemorris.com

-and-

LAW OFFICES OF KEVIN S. NEIMAN, PC

Kevin S. Neiman, Esq.
999 18th Street, Suite 1230 S
Denver, CO 80202
Telephone: (303) 996-8637
Facsimile: (877) 611-6839
E-mail: kevin@ksnpc.com

*Counsel to US VI Downey, LLC*