# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
                         :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **24 HOUR FITNESS** | : | **Case No. 20-11558 (KBO)** |
| **WORLDWIDE, INC.,** *et al.,* | : | |
| | : | |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------- x

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF 24 HOUR FITNESS WORLDWIDE, INC. AND ITS AFFILIATED DEBTORS

| **WEIL, GOTSHAL & MANGES LLP** | **PACHULSKI STANG ZIEHL & JONES LLP** |
|---|---|
| Ray C. Schrock, P.C. | Laura Davis Jones |
| Ryan Preston Dahl | Timothy P. Cairns |
| Kevin Bostel | Peter J. Keane |
| Kyle R. Satterfield | 919 North Market Street |
| 767 Fifth Avenue | 17th Floor |
| New York, New York 10153 | Wilmington, Delaware 19801 |
| Telephone: (212) 310-8000 | Telephone: (302) 652-4100 |
| Facsimile: (212) 310-8007 | Facsimile: (302) 652-4400 |

*Counsel for Debtors*
*and Debtors in Possession*


Dated: November 16, 2020
         Wilmington, Delaware

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are 24 Hour Holdings II LLC (N/A); 24 Hour Fitness Worldwide, Inc. (5690); 24 Hour Fitness United States, Inc. (8376); 24 Hour Fitness USA, Inc. (9899); 24 Hour Fitness Holdings LLC (8902); 24 San Francisco LLC (3542); 24 New York LLC (7033); 24 Denver LLC (6644); RS FIT Holdings LLC (3064); RS FIT CA LLC (7007); and RS FIT NW LLC (9372). The Debtors' corporate headquarters and service address is 12647 Alcosta Blvd., Suite 500, San Ramon, CA 94583.

# TABLE OF CONTENTS

Page

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**....................................................................................................1
- A.   *Defined Terms* .................................................................................................1
- B.   *Rules of Interpretation* ...................................................................................18
- C.   *Computation of Time* ......................................................................................18
- D.   *Governing Law* ...............................................................................................18
- E.   *Reference to Monetary Figures* ......................................................................19
- F.   *Reference to the Debtors* ................................................................................19
- G.   *Controlling Document* ....................................................................................19
- H.   *Certain Consent Rights* ..................................................................................19

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**.....................................19
- A.   *Administrative Claims* ....................................................................................20
- B.   *DIP Claims* .....................................................................................................21
- C.   *Professional Fee Claims* .................................................................................22

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...............23
- A.   *Summary of Classification* ..............................................................................23
- B.   *Treatment of Claims and Interests* .................................................................24
- C.   *Special Provision Governing Unimpaired Claims* .........................................28
- D.   *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code* ................29
- E.   *Subordinated Claims* ......................................................................................29
- F.   *Elimination of Vacant Classes* .......................................................................29
- G.   *Voting Classes; Presumed Acceptance by Non-Voting Classes* ......................29
- H.   *Controversy Concerning Impairment* .............................................................29

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ..........................................30
- A.   *Finality of Distributions* .................................................................................30
- B.   *No Substantive Consolidation* ........................................................................30
- C.   *Sources of Consideration for Plan Distributions* ...........................................30
- D.   *New Debt* .........................................................................................................30
- E.   *New Equity Interests and Warrants* ................................................................30
- F.   *New Organizational Documents* .....................................................................31
- G.   *New Board* .......................................................................................................32
- H.   *Employee Matters* ...........................................................................................32
- I.   *Corporate Existence* .......................................................................................32
- J.   *Vesting of Assets in the Reorganized Company* ..............................................33
- K.   *Cancellation of Existing Interests, Indebtedness, and Other Obligations* ......33
- L.   *Corporate Action* ...........................................................................................35
- M.   *Effectuating Documents; Restructuring Transactions* ....................................35
- N.   *Rights Offering and Backstop Commitment Agreement* ..................................36
- O.   *Exemption from Certain Taxes and Fees* ........................................................37
- P.   *Preservation of Causes of Action* ...................................................................37
- Q.   *Insurance Policies* ..........................................................................................38
- R.   *Management Incentive Plan* ............................................................................40
- S.   *Membership Agreements* .................................................................................40

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**..................40
- A.   *Assumption and Rejection of Executory Contracts and Unexpired Leases* ....40
- B.   *Claims Based on Rejection of Executory Contracts or Unexpired Leases* .....41
- C.   *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*....41
- D.   *Dispute Resolution* ..........................................................................................42
- E.   *Modifications, Amendments, Supplements, Restatements, or Other Agreements* ..........43
- F.   *Reservation of Rights* .....................................................................................43
- G.   *Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4)* .........43

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .......................................................44
    A.    *Timing and Calculation of Amounts to Be Distributed* .........................................44
    B.    *Rights and Powers of Distribution Agent* ............................................................44
    C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions* ..........44
    D.    *Securities Registration Exemption* .......................................................................47
    E.    *Compliance with Tax Requirements* ......................................................................48
    F.    *Allocations* ............................................................................................................48
    G.    *No Postpetition Interest on Claims* .......................................................................48
    H.    *Setoffs and Recoupment* ........................................................................................49
    I.    *Claims Paid or Payable by Third Parties* .............................................................49
**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,  AND**
           **DISPUTED CLAIMS** ...........................................................................................50
    A.    *Allowance of Claims and Interests* ........................................................................50
    B.    *Claims and Interests Administration Responsibilities* ..........................................50
    C.    *Estimation of Claims* .............................................................................................51
    D.    *Adjustment to Claims Register Without Objection* .................................................51
    E.    *Time to File Objections to Claims* ..........................................................................51
    F.    *Disallowance of Claims* .........................................................................................52
    G.    *Amendments to Claims* ...........................................................................................52
    H.    *Disputed Claims Reserve* .......................................................................................52
    I.    *Distributions After Allowance* ...............................................................................53
    J.    *Single Satisfaction of Claims* .................................................................................53
**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ...........53
    A.    *Compromise and Settlement of Claims, Interests, and Controversies* ...................53
    B.    *Discharge of Claims and Termination of Interests* ...............................................54
    C.    *Releases by the Debtors* .........................................................................................54
    D.    *Releases by Holders of Claims and Interests* ........................................................55
    E.    *Exculpation* ............................................................................................................56
    F.    *Injunction* ...............................................................................................................57
    G.    *Subordination Rights* .............................................................................................58
    H.    *Release of Liens* .....................................................................................................58
**ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** ........................59
    A.    *Conditions Precedent to the Effective Date* ...........................................................59
    B.    *Waiver of Conditions* .............................................................................................59
    C.    *Substantial Consummation* .....................................................................................60
    D.    *Effect of Non-Occurrence of Conditions to the Effective Date* ..............................60
**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** .....................60
    A.    *Modification and Amendments* ...............................................................................60
    B.    *Effect of Confirmation on Modifications* ...............................................................61
    C.    *Revocation or Withdrawal of the Plan* ..................................................................61
**ARTICLE XI. RETENTION OF JURISDICTION** ........................................................................61
**ARTICLE XII. MISCELLANEOUS PROVISIONS** .......................................................................63
    A.    *Immediate Binding Effect* .......................................................................................63
    B.    *Additional Documents* ............................................................................................64
    C.    *Payment of Statutory Fees* ......................................................................................64
    D.    *Reservation of Rights* .............................................................................................64
    E.    *Successors and Assigns* ..........................................................................................64
    F.    *Service of Documents* .............................................................................................64
    G.    *Term of Injunctions or Stays* ..................................................................................66
    H.    *Entire Agreement* ...................................................................................................66
    I.    *Nonseverability of Plan Provisions* .......................................................................67
    J.    *Dissolution of Committee* .......................................................................................67
    K.    *Expedited Tax Determination* .................................................................................67

Exhibit A:    Restructuring Support Agreement

Exhibit B:    Purchase Transaction

WEIL:\97709211\1\78028.0003

## INTRODUCTION

24 Hour Fitness Worldwide, Inc. and its Debtor affiliates propose this *First Amended Joint Chapter 11 Plan of Reorganization of 24 Hour Fitness Worldwide, Inc. and Its Affiliated Debtors*. Capitalized terms used but not otherwise defined shall have the respective meanings ascribed to such terms in <u>Article I.A</u> of the Plan. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    ***Acquisition Agreement*** means a purchase and sale agreement governing a transaction pursuant to the Purchase Transaction.

2.    ***AcquisitionCo*** means, in the event the Purchase Transaction occurs, one or more wholly-owned indirect corporate subsidiaries of All Day Holdings, that shall acquire substantially all of the assets of Reorganized 24 Hour Worldwide (primarily the equity interests of 24 Hour Fitness USA, Inc., which shall have converted into a limited liability company), in accordance with the Acquisition Agreement and the Purchase Transaction Documents.

3.    ***Ad Hoc Group*** means the ad hoc group of Consenting Creditors represented by O'Melveny & Myers LLP and PJT Partners, Inc.

4.    ***Adjourned Cure Dispute*** shall have the meaning ascribed to such term in <u>Article V.D</u> of the Plan.

5.    ***Adjusted Common Stock Price Per Share*** means the Undiscounted Price Per Share, as such amount is diluted by the shares of New Preferred Equity Interests to be issued pursuant to the Rights Offering.

6.    ***Administrative Claim*** means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors;

1

(ii) Professional Fee Claims; (iii) Restructuring Expenses; (iv) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; (v) fees payable to the U.S. Trustee pursuant to Section 1930 of the Judicial Code; (vi) Postpetition Intercompany Claims; and (vii) DIP Claims.

7.      ***Administrative Claims Bar Date*** means the first Business Day that is sixty-five (65) days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including the Claims Bar Date Order.

8.      ***Affiliates*** means "Affiliates" as such term is defined in section 101(2) of the Bankruptcy Code.

9.      ***All Day Holdings*** means, in the event of the Purchase Transaction, a Delaware corporation (or limited liability company that elects to be taxed as a corporation since formation) organized at the direction of the Consenting Creditors that indirectly owns all of the capital stock of AcquisitionCo.

10.      ***Allowed*** means with respect to any Claim, except as otherwise provided herein: (i) a Claim that is evidenced by a Proof of Claim filed by the Claims Bar Date in accordance with the Claims Bar Date Order (or for which Claim under the Plan, the Bankruptcy Code or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be filed); (ii) a Claim that is listed in the Schedules, if any, as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely filed; or (iii) a Claim Allowed pursuant to the Plan or a Final Order (including the DIP Order); provided that with respect to a Claim described in clauses (i) and (ii) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof or motion for estimation has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection or motion is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order; provided, further, that unless expressly waived by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.

11.      ***Assumption Dispute*** means a pending objection relating to assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

12.      ***Assumption Schedule*** means the schedule of Executory Contracts and/or Unexpired Leases that will be assumed by the Debtors pursuant to the Plan, or assumed by the Debtors and assigned to another Entity pursuant to the Plan, to be filed as part of the Plan Supplement, and as may be amended, supplemented, or modified from time to time in accordance with the Plan.

13.      ***Avoidance Actions*** means any and all actual or potential claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, and applicable non-bankruptcy law.

WEIL:\97709211\1\78028.0003

14.     ***Backstop Commitment Premium*** shall mean "Backstop Commitment Premium" as defined in the Rights Offering Backstop Commitment Agreement.

15.     ***Backstop Commitments*** means, collectively, the commitments of the Commitment Parties pursuant to the Rights Offering Backstop Commitment Agreement.

16.     ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

17.     ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent any reference made under section 157 of the Judicial Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the unit of the District Court having jurisdiction over the Chapter 11 Cases under section 151 of the Judicial Code.

18.     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code, chambers rules, and local bankruptcy rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

19.     ***Business Day*** means any day, other than a Saturday, Sunday, or "*legal holiday*" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

20.     ***Cash*** means the legal tender of the United States of America or the equivalent thereof.

21.     ***Cause of Action*** means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any Claim pursuant to section 362; (iv) any claim or defense including fraud, mistake, duress, and usury; and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any Avoidance Actions.

22.     ***Chapter 11 Cases*** means (i) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (ii) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court under Chapter 11 Case Number 20-11558 (KBO).

23.     ***Claim*** shall have the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

24.     ***Claims Bar Date*** means October 2, 2020 at 5:00 P.M. (Eastern Time), as established by the Claims Bar Date Order.

25.     ***Claims Bar Date Order*** means that certain order, entered by the Bankruptcy Court on August 24, 2020 [Docket No. 785], establishing the Claims Bar Date.

26.     ***Claims Register*** means the official register of Claims maintained by Prime Clerk LLC, as the claims, noticing, and solicitation agent in the Chapter 11 Cases.

27.     ***Class*** means any group of Claims or Interests classified under the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

28.     ***Commitment Parties*** means the Consenting Creditors that are signatories to the Rights Offering Backstop Commitment Agreement.

29.     ***Confirmation*** means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

30.     ***Confirmation Date*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

31.     ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

32.     ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and granting other related relief, in form and substance reasonably satisfactory to the Requisite Consenting Creditors.

33.     ***Consenting Creditors*** means the DIP Lenders, Holders of Prepetition Credit Facility Claims, and Holders of Senior Notes Claims that are or become party to the Restructuring Support Agreement together with their respective successors and permitted assigns.

34.     ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on June 25, 2020, pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 284].

35.     ***Cure Claim*** means a Claim based upon the applicable Debtor's monetary defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the applicable Debtor pursuant to section 365 of the Bankruptcy Code.

36.     ***Debtor*** means each of the Debtors, in its respective individual capacity as debtor and debtor in possession in the Chapter 11 Cases.

37.     ***Debtors*** means, collectively (i) 24 Hour Holdings II LLC, (ii) 24 Hour Fitness Worldwide, Inc., (iii) 24 Hour Fitness United States, Inc., (iv) 24 Hour Fitness USA, Inc., (v) 24 Hour Fitness Holdings LLC, (vi) 24 San Francisco LLC, (vii) 24 New York LLC, (viii) 24 Denver

LLC, (ix) RS FIT Holdings LLC, (x) RS FIT CA LLC, (xi) and RS FIT NW LLC, the debtors and debtors in possession in the Chapter 11 Cases.

38.      ***Deleveraging Backstop Agreement*** means an agreement setting forth the obligations of the Deleveraging Commitment Parties and 24 Hour Fitness Worldwide, Inc., with respect to the issuance and distribution, on account of the Allowed DIP Claims held by the Deleveraging Commitment Parties, New Common Equity Interests, pro rata and on a dollar-for-dollar basis, in lieu of Reorganized 24 Hour Worldwide issuing New Debt; it being understood that in the case of the Purchase Transaction, AcquisitionCo (and not any affiliate thereof) would be party to such agreement, to the extent necessary.

39.      ***Deleveraging Commitment Parties*** means Holders of Allowed DIP Claims that commit (on a several basis) to 24 Hour Fitness Worldwide, Inc., pursuant to the Deleveraging Backstop Agreement, that Reorganized Parent shall be required to issue, or in the event of the Purchase Transaction, Reorganized 24 Hour Worldwide shall be required to distribute, on account of such Allowed DIP Claims, New Common Equity Interests to the Deleveraging Commitment Parties, pro rata and on a dollar-for-dollar basis (calculated on the basis of a price per share equal to the Adjusted Common Stock Price Per Share), in lieu of Reorganized 24 Hour Worldwide issuing New Debt, in an amount equal to the aggregate amount of New Debt elected to be received by Holders of Allowed DIP Claims that are not Deleveraging Commitment Parties in lieu of New Common Equity Interests pursuant to Article II.B of the Plan but not to exceed the Exit Facility Available Amount.

40.      ***DIP Agent*** means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, and any successor and permitted assign.

41.      ***DIP Backstop Commitment Letter*** means that certain *$500.0 Million Superpriority Senior Secured Debtor-In-Possession Term Loan Credit Facility Commitment Letter*, annexed as Exhibit C to the DIP Motion.

42.      ***DIP Backstop Party*** means the DIP Lenders that are party to the DIP Backstop Commitment Letter.

43.      ***DIP Backstop Equity Issuance*** means the issuance to each DIP Lender that is also a DIP Backstop Party of its pro rata share of up to $10.0 million of New Common Equity Interests (net of the gross up by a number of shares such that the percentage issued is not diluted by the New Preferred Equity Interests issued pursuant to any Rights Offering) on account the "Upfront Equity Investment Right," as defined in the DIP Backstop Commitment Letter, which New Common Equity Interests shall be subject to dilution by the Warrants, the Management Incentive Plan, and the conversion, if any, of New Preferred Equity Interests into New Common Equity Interests.

44.      ***DIP Claims*** means Claims in respect of the DIP Obligations (as defined in the DIP Order), including all interest, premiums, fees, expenses, and other amounts owing under the DIP Documents and in accordance therewith, held by, or otherwise owing to, any or all of the DIP Agent and the DIP Lenders.

45. ***DIP Credit Agreement*** means the "DIP Credit Agreement" as defined in the DIP Order.

46. ***DIP Documents*** means the "DIP Documents" as defined in the DIP Order.

47. ***DIP Facility*** means "DIP Facility" as defined in the DIP Order.

48. ***DIP Lenders*** means "DIP Lenders" as defined in the DIP Order.

49. ***DIP Liens*** means Liens on property of the Debtors arising out of or related to the DIP Facility.

50. ***DIP Motion*** means the *Motion* filed by the Debtors on the Petition Date seeking, among other things, entry of an order approving the Debtors' entry into the DIP Facility [Docket No. 17].

51. ***DIP Order*** means the *Final Order* entered by the Bankruptcy Court on August 3, 2020 [Docket No. 652].

52. ***Disallowed*** means any Claim, or any portion thereof, that (i) has been disallowed by Final Order or settlement; (ii) is scheduled at zero or as contingent, disputed, or unliquidated on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Claims Bar Date Order, or otherwise deemed timely filed under applicable law; or (iii) is not scheduled on the Schedules and as to which a Claims Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Claims Bar Date Order, or otherwise deemed timely filed under applicable law.

53. ***Disclosure Statement*** means the disclosure statement filed by the Debtors in support of the Plan, as amended, supplemented or modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Requisite Consenting Creditors.

54. ***Disclosure Statement Motion*** means the motion of the Debtors seeking entry of an order approving the Disclosure Statement and authorizing solicitation of the Plan.

55. ***Disclosure Statement Order*** means the [*Order*] entered by the Bankruptcy Court on [●], 2020 [Docket No. ●] granting the Disclosure Statement Motion.

56. ***Disputed*** means, with respect to a Claim, a Claim that is not yet Allowed or Disallowed.

57. ***Distribution Agent*** means, as applicable, the Debtors or the Reorganized Company or any Entity that the Debtors or the Reorganized Company select, in consultation with the Requisite Consenting Creditors, to make or to facilitate distributions in accordance with the Plan.

WEIL:\97709211\1\78028.0003

58.     ***Distribution Record Date*** means two (2) Business Days following the Confirmation Date or such other date as agreed upon among the Debtors and the Requisite Consenting Creditors.

59.     ***DTC*** means The Depository Trust Company.

60.     ***Effective Date*** means, with respect to the Plan, the date that is a Business Day selected by the Debtors, in consultation with the Requisite Consenting Creditors, on which (i) no stay of the Confirmation Order is in effect; (ii) all conditions precedent specified in Article IX of the Plan have been satisfied or waived in accordance with the Plan; and (iii) the Plan is declared effective.  Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

61.     ***Eligible DIP Claim Holders*** means Holders of Allowed DIP Claims that have executed the Restructuring Support Agreement by October 21, 2020.

62.     ***Eligible GUC Holders*** means Holders of General Unsecured Claims that duly certify that they are Accredited Investors (as defined in Rule 501(a) of the Securities Act) and/or Qualified Institutional Buyers (as defined in Rule 144A of the Securities Act).

63.     ***Employee Benefit Plans*** means all confidentiality and non-competition agreements and other employment bonus, gainshare and incentive programs (other than awards of stock options, restricted stock, restricted stock units, and other equity awards), vacation, holiday pay, severance, retirement, supplemental retirement, executive retirement, pension, deferred compensation, medical, dental, vision, life and disability insurance, health savings accounts, and other health and welfare benefit plans, programs, and arrangements, and all other wage, compensation, employee expense reimbursement, and other benefit obligations of the Debtors that are described in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs and (II) Granting Related Relief* [Docket No. 19], including, for the avoidance of doubt, the Debtors' non-qualified deferred compensation plan (a/k/a the 24 Hour Fitness USA, Inc. Deferred Compensation Plan).

64.     ***Entity*** shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

65.     ***Estate*** means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

66.     ***Exculpated Parties*** means, collectively, each of the following in their capacity as such, (i) the Debtors, (ii) AcquisitionCo (if applicable), (iii) the Creditors' Committee, and (iv) each of the foregoing's respective Related Parties.

67.     ***Executory Contract*** means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

68.     ***Exercise Price*** means an exercise price with respect to the Warrants equal to a total enterprise value of $1.2 billion.

7

69. ***Exit Facility Available Amount*** means the aggregate amount of New Debt allocated to the Deleveraging Commitment Parties.

70. ***Exit Facility Credit Agreement*** means the credit agreement to be entered into by the Reorganized Company in connection with the Exit Term Loan Facility, which shall be materially consistent with the terms set forth in the Exit Facility Term Sheet.

71. ***Exit Facility Documents*** means, collectively, the Exit Facility Credit Agreement and any and all other agreements, documents, and instruments (including any guarantee agreements, pledge and collateral agreements, and other security documents) delivered or to be entered into in connection therewith.

72. ***Exit Facility Term Sheet*** means the term sheet for the New Debt annexed to the Restructuring Support Agreement as Exhibit 1 to Exhibit B thereto.

73. ***Exit Term Loan Facility*** means the term loan credit facility to be provided on the terms and conditions set forth in the Exit Facility Term Sheet in an aggregate principal amount of $200,000,000.00.

74. ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court that has not been reversed, vacated, revoked, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

75. ***General Unsecured Claim*** means any Claim (other than any Intercompany Claim, Section 510(b) Claim, or Membership Agreement Claim) as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court, including, for the avoidance of doubt, Senior Notes Claims.

76. ***General Unsecured Claim Recovery Cash Pool*** means $1,500,000, for purposes of disbursements to Holders of Allowed General Unsecured Claims, in accordance with Article III.B.4.

77. ***Gift Card*** means a card (or digital promotional code) entitling Holders of Membership Agreement Claims to receive goods or services of a specified value from the Reorganized Company.

78.     ***Governmental Unit*** shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

79.     ***GUC Cash Recovery*** has the meaning set forth in Article III.B.4.b of the Plan.

80.     ***Holder*** means an Entity holding a Claim or an Interest, as applicable, solely in its capacity as such.

81.     ***Holdings*** means 24 Hour Holdings II LLC.

82.     ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

83.     ***Indemnification Obligations*** has the meaning set forth in Article IV.Q.2 of the Plan.

84.     ***Ineligible GUC Holders*** means Holders of General Unsecured Claims that do not duly certify that they are Accredited Investors (as defined in Rule 501(a) of the Securities Act) and/or Qualified Institutional Buyers (as defined in Rule 144A of the Securities Act).

85.     ***Initial Unsecured Claims Distribution Date*** means the date on which the Distribution Agent shall make initial distributions to Holders of Allowed General Unsecured Claims and Allowed Membership Agreement Claims, pursuant to and in accordance with the Plan, which date shall be the first Business Day following the earlier of (i) the date upon which all General Unsecured Claims and Membership Agreement Claims are Allowed or Disallowed by Final Order and (ii) the date upon which the Bankruptcy Court shall have entered a Final Order authorizing a partial distribution on account of Allowed General Unsecured Claims and/or Allowed Membership Agreement Claims after notice and a hearing, upon a motion filed by the Reorganized Debtors.

86.     ***Intercompany Claim*** means any Claim held by a Debtor or a non-Debtor direct or indirect subsidiary of a Debtor against a Debtor arising before the Petition Date.

87.     ***Intercompany Interest*** means an Interest held by a Debtor in another Debtor.  For the avoidance of doubt, Parent Equity Interests are not Intercompany Interests.

88.     ***Interest*** means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "*stock*" or a similar security, including any Section 510(b) Claims.

89.     ***Judicial Code*** means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

90.     ***Lien*** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

91. ***Management Incentive Plan*** means a post-Effective Date equity incentive plan that reserves 10.0% of the New Common Equity Interests outstanding immediately after the Effective Date on the terms set forth in the Management Incentive Plan Term Sheet, which plan shall include customary anti-dilution protections, including, but not limited to, by means of a distribution of New Preferred Equity Interests.

92. ***Management Incentive Plan Term Sheet*** means the term sheet that shall be negotiated in good faith between the Debtors and the Requisite Consenting Creditors, which shall be filed as part of the Plan Supplement.

93. ***Member*** means a non-Debtor party to a Membership Agreement.

94. ***Membership Agreement Claim*** means a Claim that arises from a Membership Agreement as of the Petition Date.

95. ***Membership Agreements*** means all agreements between the Debtors and Members, which grant Members access to the Debtors' fitness clubs.

96. ***New 24 Hour Parent*** means a Delaware corporation formed by Reorganized 24 Hour Worldwide pursuant to the Reorganized Parent Formation Merger in accordance with Article IV.M.2 of the Plan.

97. ***New 24 Hour Worldwide LLC*** means a Delaware limited liability company formed by New 24 Hour Parent, which shall be disregarded as separate from New 24 Hour Parent for U.S. federal income tax purposes, pursuant to the Reorganized Parent Formation Merger in accordance with Article IV.M.2 of the Plan.

98. ***New Board*** means the initial board of directors of Reorganized Parent or All Day Holdings selected in accordance with Article IV.G of the Plan.

99. ***New Debt*** means the indebtedness to be issued by the Reorganized Company or AcquisitionCo (if applicable) under the Exit Term Loan Facility.

100. ***New Common Equity Interests*** means the common equity interests in Reorganized Parent or All Day Holdings.

101. ***New Equity Interests*** means, collectively, the New Common Equity Interests and the New Preferred Equity Interests.

102. ***New Preferred Equity Interests*** means the preferred equity interests in Reorganized Parent or All Day Holdings.

103. ***New Organizational Documents*** means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of Reorganized Parent or All Day Holdings, in form and substance satisfactory to the Requisite Consenting Creditors.

104. ***Other Secured Claim*** means a Secured Claim, other than an Administrative Claim, a DIP Claim, a Priority Tax Claim, or a Prepetition Credit Facility Claim, including, for the

avoidance of doubt, any Claim arising under, derived from, or based upon any letter of credit issued in favor of one or more of the Debtors, the reimbursement obligation for which is either secured by a Lien on collateral of is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

105.    ***Parent Equity Interests*** means any Interest in Holdings.

106.    ***Person*** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

107.    ***Petition Date*** means June 15, 2020.

108.    ***Plan*** means this joint chapter 11 plan of reorganization, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code, and the terms hereof.

109.    ***Plan Supplement*** means a supplemental appendix to the Plan containing, among other things, forms of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court (in each case, in form and substance reasonably satisfactory to the Requisite Consenting Creditors), including, but not limited to, the following:  (i)  New Organizational Documents; (ii) the identity of the members of the New Board; (iii) Rejection Schedule; (iv) Assumption Schedule; (v) Schedule of Retained Causes of Action; (vi) Management Incentive Plan Term Sheet; (vii) Shareholders Agreement, if any; and (viii) the Deleveraging Backstop Agreement; provided that through the Effective Date, the Debtors shall have the right to amend the documents contained in the Plan Supplement in accordance with the terms of the Plan.  The Plan Supplement shall be filed with the Bankruptcy Court no later than seven (7) calendar days prior to the deadline to object to the Plan.

110.    ***Postpetition Intercompany Claim*** means any Claim held by a Debtor or a non-Debtor direct or indirect subsidiary of a Debtor against a Debtor arising after the Petition Date.

111.    ***Prepetition Agent*** means the administrative agent and collateral agent under the Prepetition Credit Agreement and the other Prepetition Loan Documents, including any predecessor or successor and permitted assign thereto.

112.    ***Prepetition Credit Agreement*** means that certain Credit Agreement, dated as of May 31, 2018, by and among Holdings, 24 Hour Fitness Worldwide, Inc., as borrower, the Prepetition Agent, and the Prepetition Lenders, as amended, restated, modified, or supplemented from time to time prior to the Petition Date.

113.    ***Prepetition Credit Facility Claims*** means all Claims arising under or in connection with the Prepetition Loan Documents.

114.    ***Prepetition Lenders*** means "Lenders" as defined in the Prepetition Credit Agreement.

WEIL:\97709211\1\78028.0003

115.    ***Prepetition Loan Documents*** means the Prepetition Credit Agreement and all related agreements and documents executed by any of the Debtors in connection with the Prepetition Credit Agreement.

116.    ***Priority Non-Tax Claim*** means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim and (ii) a Priority Tax Claim.

117.    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

118.    ***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

119.    ***Professional*** means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

120.    ***Professional Fee Claims*** means all Claims for Professional Fees incurred on or after the Petition Date through the Effective Date.

121.    ***Professional Fee Escrow*** means an escrow account established and funded pursuant to Article II.C.2 of the Plan.

122.    ***Professional Fee Reserve Amount*** means the aggregate unpaid Professional Fee Claims through and including the Effective Date, as estimated in accordance with Article II.C.3 of the Plan.

123.    ***Professional Fees*** means fees and expenses (including transaction and success fees) incurred by a Professional.

124.    ***Proof of Claim*** means a proof of Claim filed in the Chapter 11 Cases.

125.    ***Purchase Transaction*** means the transactions described on Exhibit B hereto (including any amendments thereto), pursuant to which AcquisitionCo acquires substantially all of the assets of Reorganized 24 Hour Worldwide (primarily the equity interests of 24 Hour Fitness USA, Inc., which shall have converted into a limited liability company) immediately after consummation of the Plan.

126.    ***Purchase Transaction Documents*** means (i) the Acquisition Agreement, and (ii) any other documents setting forth the definitive terms of the Purchase Transaction.

12

127.    ***Purchase Transaction Election Date*** means the date that is ten (10) days prior to the date the Plan Supplement is required to be filed.

128.    ***Reinstate, Reinstated***, **or** ***Reinstatement*** means leaving a Claim Unimpaired under the Plan.

129.    ***Rejection Schedule*** means the schedule of Executory Contracts and/or Unexpired Leases to be rejected pursuant to the Plan, as may be amended, supplemented, or modified from time to time.

130.    ***Related Party*** means, with respect to (x) any Entity or Person, such Entity's or Person's predecessors, successors and assigns, parents, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers, (y) with respect to each of the foregoing in clause (x), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (z) with respect to each of the foregoing in clause (x), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

131.    ***Released Parties*** means, collectively, each of the following in their capacity as such: (a)(i) the Debtors, (ii) the Reorganized Company, (iii) the Consenting Creditors, (iv) the Sponsors, (v) the DIP Agent, (vi) the DIP Lenders, (vii) the Prepetition Agent, (viii) the Senior Notes Trustee, (ix) the Commitment Parties, (x) AcquisitionCo (if applicable), (xi) each Holder of a Prepetition Credit Facility Claim or Senior Notes Claim that votes for, and does not object to, the Plan, and (xii) the Creditors' Committee and (b) with respect to each of the foregoing Entities and Persons in clause (a), all of their respective Related Parties to the maximum extent permitted by law.  Notwithstanding the foregoing, any Entity or Person that opts out of the releases set forth in <u>Article VIII.D</u> of the Plan shall not be deemed a Released Party.

132.    ***Releasing Parties*** means, collectively, each of the following in their capacity as such: (i) each Consenting Creditor; (ii) each Commitment Party; (iii) each DIP Lender; (iv) the DIP Agent; (v) the Prepetition Agent; (vi) the Senior Notes Trustee; (vii) the Sponsors; (viii) all other Holders of Claims or Interests who vote to accept the Plan but who do not timely opt-out of the releases in accordance with the ballot to solicit acceptances or rejections of the Plan; (ix) all Holders of Claims or Interests that are Unimpaired under the Plan; and (x) with respect to each of the foregoing Entities and Persons in clauses (i) through (ix), all of their respective Related Parties to the maximum extent permitted by law.

133.    ***Reorganized 24 Hour Worldwide*** means 24 Hour Fitness Worldwide, Inc. as reorganized pursuant to and under the Plan, or any successors or assigns thereto by merger, consolidation, conversion, acquisition of assets, or otherwise, on or after the Effective Date.

134.    ***Reorganized Company*** means, the Reorganized Debtors, together with any Reorganized Parent or All Day Holdings.

WEIL:\97709211\1\78028.0003

135.     ***Reorganized Debtors*** means the Debtors, as reorganized pursuant to and under the Plan, or any successors or assigns thereto by merger, consolidation, conversion, acquisition of assets, or otherwise, on or after the Effective Date.

136.     ***Reorganized Parent*** means initially on the Effective Date and with respect to the distributions to Holders of Claims under the Plan, Reorganized 24 Hour Worldwide, and immediately following the Reorganized Parent Formation Merger, New 24 Hour Parent.

137.     ***Reorganized Parent Formation Merger*** means the transactions described in Article IV.M.2 of the Plan, pursuant to which Reorganized 24 Hour Worldwide merges with and into New 24 Hour Worldwide LLC on or immediately after the Effective Date, and pursuant to which New 24 Hour Parent shall become the new Reorganized Parent.

138.     ***Required DIP Lenders*** means "Required Lenders" as defined in the DIP Credit Agreement.

139.     ***Requisite Commitment Parties*** means Commitment Parties holding at least 50.1% of the aggregate Backstop Commitments.

140.     ***Requisite Consenting Creditors*** means, as of the date of determination, three non-affiliated Consenting Creditors who hold a majority of the aggregate principal amount outstanding of the loans under the DIP Credit Agreement held by all Consenting Creditors.

141.     ***Restructuring Expenses*** means the reasonable and documented fees and expenses incurred in connection with the Chapter 11 Cases by (i) the Ad Hoc Group, including the reasonable and documented fees and expenses of (a) O'Melveny & Myers LLP, as counsel to the Ad Hoc Group; (b) Richards, Layton & Finger, P.A., as local counsel to the Ad Hoc Group; and (c) PJT Partners, Inc., as investment banker to the Ad Hoc Group, and (ii) the DIP Agent, including the reasonable and documented fees and expenses of (a) Covington & Burling LLP, as counsel to the DIP Agent, and (b) Troutman Pepper Hamilton Sanders LLP, as local counsel to the DIP Agent, in each case, payable in accordance with the terms of any applicable engagement or fee letters executed with such parties or pursuant to the terms of the DIP Order and without the requirement for the filing of retention applications, fee applications, or any other application in the Chapter 11 Cases, which shall be allowed as Administrative Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.   For the avoidance of doubt, Restructuring Expenses shall not be treated as Prepetition Credit Facility Claims.

142.     ***Restructuring Support Agreement*** means that certain Restructuring Support Agreement, dated as of October 7, 2020, by and between the Debtors and the Consenting Creditors, as the same may be amended, supplemented, or modified from time to time in accordance with its terms.

143.     ***Restructuring Transactions*** shall have the meaning set forth in Article IV.M of the Plan.

144.     ***Retained Causes of Action*** means the Causes of Action identified on the Schedule of Retained Causes of Action.

145.     ***Rights Offering*** means that certain offering of Subscription Rights pursuant to the Rights Offering Procedures.

146.     ***Rights Offering Amount*** means, with respect to the Rights Offering Shares, an aggregate purchase price of $65.0 million; provided, that the Rights Offering Amount may be increased to an aggregate purchase price of up to $80.0 million with the consent of the Requisite Consenting Creditors.

147.     ***Rights Offering Backstop Commitment Agreement*** means an agreement setting forth the terms and conditions of the commitments and obligations of the Commitment Parties, in form and substance reasonably acceptable to the Requisite Commitment Parties and the Debtors.

148.     ***Rights Offering Holdback*** means, with respect to the Rights Offering Amount, a 50.0% holdback available only to the Commitment Parties.

149.     ***Rights Offering Holdback Shares*** means the Rights Offering Shares that are issued to the Commitment Parties on account of the Rights Offering Holdback.

150.     ***Rights Offering Procedures*** means the procedures governing the Rights Offering, which shall be approved by the Bankruptcy Court and shall otherwise be in form and substance reasonably acceptable to the Debtors and the Requisite Commitment Parties.

151.     ***Rights Offering Shares*** means the shares of New Preferred Equity Interests that are issued in connection with the Rights Offering.

152.     ***Schedule of Retained Causes of Action*** means a schedule of certain Claims and Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan; provided, that in no instance shall Avoidance Actions be retained; provided, further, that in no instance shall Claims or Causes of Action against any Released Party or any Exculpated Party be retained.

153.     ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors [Docket Nos. 798–813, 815–820, 823–833] pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as the same may be amended, supplemented, or modified from time to time.

154.     ***Senior Notes Claims*** means all Claims arising under or in connection with the Senior Notes Indenture.

155.     ***Senior Notes Documents*** means the Senior Notes Indenture and all related agreements and documents executed by any of the Debtors in connection with the Senior Notes Indenture.

156.     ***Senior Notes Indenture*** means that certain Indenture, dated as of May 30, 2014, by and between 24 Hour Fitness Worldwide, Inc., as issuer, the Senior Notes Trustee, as amended, restated, modified, or supplemented from time to time prior to the Petition Date.

157.    ***Senior Notes Trustee*** means Wells Fargo Bank, National Association, in its capacity as indenture trustee under the Senior Notes Indenture and the other Senior Notes Documents, including any successor and permitted assign thereto.

158.    ***Senior Notes Trustee Claims*** means Claims for reasonable compensation, fees, expenses, disbursements, indemnification, subrogation, and contribution of the Senior Notes Trustee, including, without limitation, internal default fees, and attorneys', financial advisors', and agents' fees, expenses, and disbursements, incurred by or owed to the Senior Notes Trustee, whether prepetition or postpetition, whether prior to or after consummation of the Plan, to the extent provided for under the Senior Notes Indenture.  Any Senior Notes Trustee Claims accrued after the Petition Date are deemed Administrative Claims in accordance with the terms of the Senior Notes Indenture.

159.    ***Section 510(b) Claims*** means any Claim against any Debtor (i) arising from the rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor; (ii) for damages arising from the purchase or sale of such a Security; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim; provided, that a Section 510(b) Claim shall not include any Claims subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to any Interest.

160.    ***Secured Claim*** means a Claim (a) secured by a Lien on any Debtor's interest in property to the extent of the value of such interest as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code (including the DIP Order) or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

161.    ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

162.    ***Security*** shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

163.    ***Shareholders Agreement*** means any shareholders agreement, equity holders agreement, operating agreement, or other similar agreement for Reorganized Parent or All Day Holdings, as applicable, to which Holders of New Equity Interests shall become party to on or immediately after the Effective Date governing, among other things, the relative rights of Holders of New Equity Interests.

164.    ***Sponsors*** means 24 Hour Holdings I Corp. and its Related Parties, including, among other entities, AEA Investors Fund V LP; AEA Investors Fund V-A LP; AEA Investors Fund V-B LP; AEA Investors Fund V QP Participant Fund LP; AEA Investors Fund V Participant Fund LP; Fitness Capital Partners LP; and 2411967 Ontario Limited.

165.    ***Subscription Agreement*** means the subscription agreement setting forth the terms and conditions of the issuance of New Preferred Equity Interests to the Holders of Allowed DIP Claims that elect to participate in the Rights Offering.

WEIL:\97709211\1\78028.0003

166. ***Subscription Rights*** means the rights of Eligible DIP Claim Holders to subscribe for and purchase, as part of the Rights Offering, their Pro Rata allocation of the Rights Offering Amount, subject to the Rights Offering Holdback and the conditions set forth in <u>Article IV.N</u> of the Plan.

167. ***Surviving DIP Provisions*** means any provisions of the DIP Documents governing the DIP Facility that by their terms survive the payoff and termination of the DIP Documents.

168. ***Surviving Prepetition Credit Facility Provisions*** means any provisions of the Prepetition Loan Documents that by their terms survive the termination of the Prepetition Loan Documents.

169. ***Surviving Senior Notes Provisions*** means any provisions of the Senior Notes Documents that by their terms survive the termination of the Senior Notes Documents.

170. ***Undiscounted Price Per Share*** means the price per share of New Common Equity Interests equal to the per share equity value of the Reorganized Parent or All Day Holdings (prior to dilution by the shares of New Preferred Equity Interests to be issued pursuant to the Rights Offering) based on 100 million shares of New Common Equity Interests issued by the Reorganized Parent or All Day Holdings.

171. ***U.S. Trustee*** means the Office of the United States Trustee for the District of Delaware.

172. ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

173. ***Unimpaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

174. ***Voting Deadline*** means the date by which all Persons or Entities entitled to vote on the Plan must vote to accept or reject the Plan and submit an election with respect to the releases by holders of Claims and Interests provided in <u>Article VIII.D</u> of the Plan in accordance with the Disclosure Statement Order.

175. ***Warrants*** means warrants to purchase 6.5% of the New Common Equity Interests (calculated after the issuance of New Common Equity Interest to Holders of Allowed DIP Claims on account of such DIP Claims pursuant to the Plan, the DIP Backstop Equity Issuance, the issuance of New Common Equity Interests to Holders of Allowed Prepetition Credit Facility Claims on account of such Prepetition Credit Facility Claims pursuant to the Plan, and the conversion, if any, of New Preferred Equity Interests into New Common Equity Interests (regardless of when the conversion, if any, of the New Preferred Equity Interests into New Common Equity Interests occurs), but before giving effect to dilution from the Management Incentive Plan), with a cashless Exercise Price and a five (5) year term.

B.    *Rules of Interpretation*

For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) except as otherwise provided herein, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) except as otherwise provided, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (iv) unless otherwise specified herein, all references herein to "Articles" are references to Articles of the Plan or hereto; (v) unless otherwise stated herein, the words "herein," "hereof," and "hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (viii) unless otherwise specified, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (x) any docket number references in the Plan shall refer to the docket number of any document filed with the Bankruptcy Court in the Chapter 11 Cases; (xi) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (xii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (xiii) any immaterial effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (xiv) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (xv) any reference to an Entity as a Holder of a Claim or Interest includes such Entity's permitted successors and assigns.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights,

WEIL:\97709211\1\78028.0003

obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, that corporate or limited liability company governance matters relating to the Debtors not incorporated or formed (as applicable) in the State of New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Company shall mean the Debtors and the Reorganized Company, as applicable, to the extent the context requires.

G.      *Controlling Document*

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement) and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that in the event of a conflict between the Confirmation Order, on the one hand, and any of the Plan and the Plan Supplement, on the other hand, the Confirmation Order shall govern and control in all respects.

H.      *Certain Consent Rights*

Notwithstanding anything in the Plan to the contrary, any and all consent rights set forth in the Restructuring Support Agreement with respect to the form and substance of the Plan and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A of the Plan) and fully enforceable as if stated in full herein.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims and Administrative Claims, including DIP Claims, Professional Fee Claims, and Postpetition Intercompany Claims, have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in Article III of the Plan.

A.    *Administrative Claims*

Except with respect to DIP Claims, Professional Fee Claims, Restructuring Expenses, and Senior Notes Trustee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim and the applicable Debtor agree to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash (i) on the Effective Date, if such Administrative Claim is Allowed as of the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter) or (ii) if such Administrative Claim is not Allowed as of the Effective Date, upon entry of an order of the Bankruptcy Court Allowing such Claim, or as soon as reasonably practicable thereafter; provided that if an Allowed Administrative Claim arises from liabilities incurred by the Debtors' Estates in the ordinary course of business after the Petition Date, such Claim shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such Claim in the ordinary course.

On the later of (a) the Effective Date and (b) the date on which such fees, expenses, or disbursements would be required to be paid under the terms of the DIP Order, the Debtors or the Reorganized Company, as applicable, shall pay all Restructuring Expenses that have accrued and are unpaid as of the Effective Date and are required to be paid under or pursuant to the DIP Order.

Notwithstanding anything to the contrary herein, on the Effective Date, the Reorganized Company shall pay in full in Cash, without application to or approval of the Bankruptcy Court and without a deduction from distributions made to Holders of Senior Notes Claims, any and all unpaid Senior Notes Trustee Claims, subject to an aggregate cap of $275,000. The Senior Notes Trustee shall provide reasonably detailed invoices relating to all incurred and unpaid Senior Notes Trustee Claims as of such date, together with an estimate of Senior Notes Trustee Claims to be incurred from such date up to and including the Effective Date, to the Debtors no later than five (5) days before the Effective Date (subject to redaction to preserve attorney-client privilege). If the Debtors or the Reorganized Company, as applicable, dispute any invoices of the Senior Notes Trustee, the Debtors or Reorganized Company, as applicable, shall (i) pay the undisputed portion of the invoices and (ii) notify the Senior Notes Trustee of such dispute within three (3) days after presentation of the invoices. Upon notification of a dispute, the Senior Notes Trustee may submit such dispute for resolution by the Bankruptcy Court or assert the Senior Notes Trustee's priority in respect of payment under section 6.10 of the Senior Notes Indenture and the right to exercise the Senior Notes Trustee's charging lien under section 7.06(d) of the Senior Notes Indenture. To the extent that the Senior Notes Trustee provides services, or incurs costs or expenses, including professionals' fees, in connection with the Plan, the Confirmation Order, or the Senior Notes Indenture, on or after the Effective Date, the Senior Notes Trustee shall be entitled to receive from the Reorganized Company, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. The payment of such compensation and expenses will be made promptly and on the terms provided herein or as otherwise agreed to by the Senior Notes Trustee and the Reorganized Company, as applicable.

Except as otherwise provided in this Article II.A or the Claims Bar Date Order, and except with respect to Administrative Claims that are DIP Claims, Restructuring Expenses, or Professional Fee Claims, requests for payment of Administrative Claims must be filed and served

on the Reorganized Company pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date; provided that the Administrative Claims Bar Date does not apply to Professional Fee Claims or Administrative Claims arising in the ordinary course of business.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS, THE REORGANIZED COMPANY, THE ESTATES, OR THE PROPERTY OF ANY OF THE FOREGOING, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

B.    *DIP Claims*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to the aggregate amount of the DIP Obligations (as defined in the DIP Order), including (i) the principal amount outstanding under the DIP Facility on such date; (ii) all interest accrued and unpaid thereon through and including the date of payment; and (iii) all accrued fees, expenses, and indemnification obligations payable under the DIP Documents.

On the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each Holder of an Allowed DIP Claim shall receive (i) Cash in the amount of any accrued and unpaid interest owed to such Holder under the DIP Facility and (ii) its Pro Rata share of:

- 95.0% of the New Common Equity Interests at the Undiscounted Price Per Share, subject to dilution by the DIP Backstop Equity Issuance, the Warrants, the Management Incentive Plan, and the conversion, if any, of New Preferred Equity Interests into New Common Equity Interests;

- the New Debt; and

- solely with respect to Eligible DIP Claim Holders, the Subscription Rights.

Each Holder of an Allowed DIP Claim that is also a DIP Backstop Party shall also receive its pro rata share of the DIP Backstop Equity Issuance.

Each Holder of an Allowed DIP Claim, other than the Deleveraging Commitment Parties, shall be able to elect, on a dollar-for-dollar basis (calculated on the basis of a price per share equal to the Adjusted Common Stock Price Per Share), to substitute some or all of its allocated New Common Equity Interests for New Debt, in an aggregate amount (among all such electing Holders of Allowed DIP Claims) not to exceed the Exit Facility Available Amount.  To the extent that, after such reallocation, the Deleveraging Commitment Parties would continue to be allocated New Debt, each Deleveraging Commitment Party shall have the option (on a several basis) to substitute all or a portion of its allocation of New Debt for New Common Equity Interests.

C.    *Professional Fee Claims*

    1.    <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court no later than the first Business Day that is forty-five (45) calendar days after the Effective Date unless otherwise ordered by the Bankruptcy Court.  Objections to any Professional Fee Claims must be filed and served on counsel to the Debtors, counsel to the Ad Hoc Group, counsel to the Creditors' Committee, the U.S. Trustee, and the requesting party no later than twenty-one (21) calendar days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the Debtors and the party requesting compensation of a Professional Fee Claim).

    2.    <u>Professional Fee Escrow</u>

If the Professional Fee Reserve Amount is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Reserve Amount, and no Liens, claims, or interests shall encumber the Professional Fee Escrow in any way (whether on account of the New Debt or otherwise).  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors, the Estates, or the Reorganized Company and (ii) shall be held in trust for the Professionals; <u>provided</u>, <u>that</u> funds remaining in the Professional Fee Escrow after all Professional Fee Claims have been Allowed and irrevocably paid in full or Disallowed shall promptly be paid to the Reorganized Company without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.  Allowed Professional Fee Claims shall be paid in Cash by the Debtors or the Reorganized Company, as applicable, to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; <u>provided</u>, <u>that</u> the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow.

    3.    <u>Professional Fee Reserve Amount</u>

No later than five (5) Business Days prior to the Effective Date, holders of Professional Fee Claims shall provide a reasonable estimate of unpaid Professional Fee Claims incurred in rendering services to the Debtors prior to approval by the Bankruptcy Court through and including the Effective Date, including any fees and expenses projected to be outstanding as of the Effective Date, and the Debtors shall escrow such estimated amounts for the benefit of the holders of the Professional Fee Claims until the fee applications related thereto are resolved by Final Order or agreement of the parties; <u>provided</u>, <u>that</u> such estimate shall not be deemed to limit the amount of fees and expenses that are the subject of a Professional's final request for payment of filed Professional Fee Claims.  If a holder of a Professional Fee Claim does not provide an estimate, the Debtors shall estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Professional Fee Claim.  When all Professional Fee Claims have been Allowed and paid in full or Disallowed, any remaining amount in such escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Reorganized Company without any further action or order of the Bankruptcy Court.

WEIL:\97709211\1\78028.0003

4.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Company shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Reorganized Company may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.      Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtor agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims shall receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Summary of Classification*

All Claims and Interests, except for Claims addressed in Article II of the Plan, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.F of the Plan.

1.    <u>Class Identification</u>

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Prepetition Credit Facility Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Membership Agreement Claims | Impaired | Yes |
| 6 | Intercompany Claims | Impaired or Unimpaired | No (Presumed to Accept or Deemed to Reject) |
| 7 | Subordinated Claims | Impaired | No (Deemed to Reject) |
| 8 | Intercompany Interests | Impaired or Unimpaired | No (Presumed to Accept or Deemed to Reject) |
| 9 | Parent Equity Interests | Impaired | No (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

1.    <u>Class 1 – Priority Non-Tax Claims</u>

a.    *Classification*:  Class 1 consists of all Priority Non-Tax Claims.

b.    *Treatment*:  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, at the option of the Debtors:  (i) each such holder shall receive payment in Cash in an amount equal to such Claim, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is reasonably practicable; or (ii) on the Effective Date, such Holder's Allowed Priority Non-Tax Claim shall be Reinstated.

c.    *Voting*:  Class 1 is Unimpaired under the Plan.  Each Holder of a Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan,

WEIL:\97709211\1\78028.0003

and the votes of such Holders shall not be solicited with respect to Priority Non-Tax Claims.

2.    Class 2 – Other Secured Claims

a.    *Classification*:  Class 2 consists of all Other Secured Claims.

b.    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim against the Debtors agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, at the option of the Debtors:  (i) each such Holder shall receive Cash in an amount equal to the Allowed amount of such Claim on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Claim; (ii) on the Effective Date, such Holder's Allowed Other Secured Claim shall be Reinstated; (iii) on the Effective Date, such Holder shall receive such other treatment sufficient to render such Holder's Allowed Other Secured Claim Unimpaired; or (iv) on the Effective Date, such Holder shall receive delivery of, or shall retain, the applicable collateral securing any such Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code in satisfaction of the Allowed amount of such Other Secured Claim.

c.    *Voting*:  Class 2 is Unimpaired under the Plan.  Each Holder of an Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Other Secured Claims.

3.    Class 3 – Prepetition Credit Facility Claims

a.    *Classification*:  Class 3 consists of all Prepetition Credit Facility Claims.

b.    *Allowance*:  The Prepetition Credit Facility Claims are Allowed in the aggregate amount of $690,784,861.41, plus fees, expenses, and other amounts arising and payable under and in accordance with the Prepetition Loan Documents, to the extent permitted by the Bankruptcy Code.

c.    *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Credit Facility Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Prepetition Credit Facility Claim, on the Effective Date, each such Holder shall receive, pursuant to the Restructuring Transactions, its Pro Rata share of 5.0% of the New Common Equity Interests, subject to dilution by the DIP Backstop Equity Issuance,

WEIL:\97709211\1\78028.0003

the Warrants, the Management Incentive Plan, and the conversion, if any, of New Preferred Equity Interests into New Common Equity Interests.

d.  *Voting*:  Class 3 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

4.  Class 4 – General Unsecured Claims

a.  *Classification*: Class 4 consists of all General Unsecured Claims.

b.  *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, on the Effective Date or as soon as reasonably practicable thereafter, each such Holder shall receive, without regard to the particular Debtor against which such Claim is Allowed:

- with respect to each General Unsecured Claim that (i) is Allowed in an amount less than or equal to $250,000 or (ii) is held by an Ineligible GUC Holder and is Allowed in amount greater than $250,000 but less than or equal to $400,000, Cash in an amount equal to 1% of the amount of such Allowed General Unsecured Claim, to be funded from the General Unsecured Claim Recovery Cash Pool (the "**GUC Cash Recovery**"); and

- with respect to each General Unsecured Claim that (i) is held by an Eligible GUC Holder and is Allowed in an amount greater than $250,000 but less than or equal to $400,000 or (ii) is Allowed in an amount greater than $400,000, its Pro Rata share of the Warrants; provided, that, if the number of Holders receiving Warrants will exceed 1,500, then the Debtors reserve the right to provide the GUC Cash Recovery (in lieu of its Pro Rata share of Warrants) to Eligible GUC Holders that hold General Unsecured Claims that are Allowed in an amount greater than $250,000 but less than or equal to $400,000 on account of such Claims, beginning with the Holder of the General Unsecured Claim Allowed in the smallest aggregate amount, such that the number of Holders that will receive Warrants does not exceed 1,500.

c.  *Voting:* Class 4 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

5.  Class 5 –Membership Agreement Claims

a.  *Classification*: Class 5 consists of all Membership Agreement Claims.

WEIL:\97709211\1\78028.0003

b.    *Treatment*:  Except to the extent that a Holder of an Allowed Membership Agreement Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Membership Agreement Claim, on the Effective Date or as soon as reasonably practicable thereafter, each such Holder shall receive, without regard to the particular Debtor against which such Claim is Allowed:

- with respect to each Membership Agreement Claim that is Allowed in amount less than or equal to $250.00, a Gift Card in the amount of $25.00; and

- with respect to each Membership Agreement Claim that is Allowed in amount greater than $250.00, a Gift Card in the amount of $50.00.

c.    *Voting:* Class 5 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Claims

a.    *Classification*: Class 6 consists of all prepetition Intercompany Claims.

b.    Treatment:  On or after the Effective Date, all Intercompany Claims shall be adjusted, continued, settled, Reinstated, discharged, or eliminated in a tax-efficient manner (to the extent reasonably practicable) as determined by the Debtors or the Reorganized Company, as applicable, in their reasonable discretion, but in no event paid in Cash.

c.    *Voting*:  Class 6 is Impaired or Unimpaired under the Plan.  Holders of Intercompany Claims are either (i) deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code or (ii) conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Intercompany Claims.

7.    Class 7 – Section 510(b) Claims

a.    *Classification*: Class 7 consists of all Section 510(b) Claims.

b.    *Treatment*: Section 510(b) Claims shall be cancelled, released, discharged, and extinguished as of the Effective Date and shall be of no further force or effect, and Holders of Section 510(b) Claims shall not receive any distribution on account of such Claims.

c.    *Voting*:  Each Holder of a Section 510(b) Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject

WEIL:\97709211\1\78028.0003

the Plan, and the votes of such Holders shall not be solicited with respect to 510(b) Claims.

8.  Class 8 – Intercompany Interests

   a.   *Classification*:  Class 8 consists of all Intercompany Interests.

   b.   Treatment:  On the Effective Date, all Intercompany Interests shall be cancelled, Reinstated, or receive such other tax-efficient treatment (to the extent reasonably practicable) as determined by the Debtors or the Reorganized Company, as applicable, in their reasonable discretion.

   c.   *Voting*:  Class 8 is Impaired or Unimpaired under the Plan.  Holders of Intercompany Interests are either (i) deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code or (ii) conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders shall not be solicited with respect to Intercompany Interests.

9.  Class 9 – Parent Equity Interests

   a.   *Classification*: Class 9 consists of all Parent Equity Interests.

   b.   *Treatment*: On the Effective Date, Parent Equity Interests shall be cancelled, released, and extinguished, and be of no further force or effect, whether surrendered for cancellation or otherwise, and there shall be no distributions for Holders of Parent Equity Interests on account of such Interests.

   c.   *Voting*: Class 9 is Impaired under the Plan.  Holders of Parent Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Parent Equity Interests are not entitled to vote to accept or reject the Plan.

C.  *Special Provision Governing Unimpaired Claims*

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Reorganized Company's rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims, and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date against or with respect to any Claim that is Unimpaired by the Plan.  Except as otherwise specifically provided in the Plan, the Debtors and the Reorganized Company shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' and the Reorganized Company's legal and equitable rights

with respect to any Reinstated Claim or Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by any Impaired Class of Claims.  The Debtors shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

E.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Reorganized Company reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

H.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

WEIL:\97709211\1\78028.0003

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Finality of Distributions*

Subject to <u>Article VI</u> of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class are intended to be and shall be final.

B.    *No Substantive Consolidation*

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor.  The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

C.    *Sources of Consideration for Plan Distributions*

The Reorganized Company shall fund distributions under the Plan with (i) Cash on hand and (ii) the issuance of the New Equity Interests, the New Debt, and the Warrants.

D.    *New Debt*

Reorganized 24 Hour Worldwide or AcquisitionCo (if applicable) shall issue the New Debt and provide any related guarantees, and the New Debt will be made available to Reorganized 24 Hour Worldwide or AcquisitionCo (if applicable), pursuant to and subject to the terms and conditions set forth in the Exit Facility Documents, and, with respect to AcquisitionCo pursuant to the terms and conditions set forth in the Acquisition Agreement.

Confirmation shall be deemed approval of the issuance and incurrence of the New Debt (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith), and to the extent not approved by the Bankruptcy Court previously, the Reorganized Company shall be authorized to execute and deliver those documents necessary or appropriate to issue and incur the New Debt and related guarantees, including the Exit Facility Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors (with the consent of the Requisite Consenting Creditors) or Reorganized Company may deem to be necessary to consummate the New Debt. The foregoing does not extend to any equity holder or board actions required under applicable law with respect to AcquisitionCo and any affiliate of AcquisitionCo (including All Day Holdings).   The obligations incurred by the Reorganized Company pursuant to the Exit Term Loan Facility and the Exit Facility Documents shall be secured and paid or otherwise satisfied pursuant to, and as set forth in, the Exit Facility Documents.

E.    *New Equity Interests and Warrants*

In the event that the Purchase Transaction is not elected, Reorganized Parent is authorized to issue or cause to be issued and shall issue, and whether the Purchase Transaction is elected or

WEIL:\97709211\1\78028.0003

not, Reorganized 24 Hour Worldwide is authorized to distribute and shall distribute, the New Equity Interests and Warrants without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.  The foregoing does not extend to any equity holder or board actions required under applicable law with respect to AcquisitionCo and any affiliate of AcquisitionCo (including All Day Holdings).  The New Equity Interests shall be issued and distributed free and clear of all Liens, claims, and other interests.

The Warrants shall be automatically exercisable upon any scheme of merger, acquisition, reorganization, liquidation, dissolution, winding-up or sale of the Reorganized Company or the sale of all or substantially all the assets of the Reorganized Company where the Exercise Price is achieved.  The Warrants shall have anti-dilution protection with respect to the impact of any of the following:  (a) future dividends; (b) recapitalizations, stock splits, and stock dividends; (c) the issuance and conversion, if any, of New Preferred Equity Interests in connection with the Rights Offering (on an as-converted basis, regardless of when the conversion, if any, of New Preferred Equity Interests into New Common Equity Interests occurs); and (d) a change of control that occurs after the Effective Date but prior to the expiration of the Warrants.  Holders of Warrants shall have standard information rights.

Any Person's acceptance of New Equity Interests shall be deemed to constitute its agreement to be bound by the Shareholders Agreement, if any, and the New Organizational Documents, as the same may be amended, supplemented, or modified from time to time following the Effective Date in accordance with their terms.  The Shareholders Agreement, if any, and the New Organizational Documents shall be binding on all holders of the New Equity Interests (and their respective successors and assigns), whether such New Equity Interests are received or to be received on or after the Effective Date and regardless of whether such holder executes or delivers a signature page to the Shareholders Agreement, if any, or the New Organizational Documents.  Notwithstanding the foregoing, Reorganized Parent or All Day Holdings may condition the receipt of any New Equity Interests issued pursuant to the Plan upon the receipt of duly executed counter-signature pages to the Shareholders Agreement, if any.

All of the New Equity Interests and Warrants issued and/or distributed pursuant to the Plan shall be duly authorized, validly issued, and, as applicable, fully paid, and non-assessable.  Each distribution and issuance of the New Equity Interests and Warrants under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

F.    *New Organizational Documents*

On or prior to the Effective Date, the New Organizational Documents shall be filed with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation or organization in accordance with the corporate laws of the respective states, provinces, or countries of incorporation or organization.  The New Organizational Documents shall prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, the New

Organizational Documents may be amended and restated as permitted by such documents and the laws of their respective states, provinces, or countries of incorporation or organization.

In order to preserve the Reorganized Company's ability to utilize certain tax attributes that exist as of the Effective Date, the charter, bylaws, and other organizational documents of the Reorganized Company may restrict certain transfers of the New Equity Interests.

G.     *New Board*

As of the Effective Date, except as set forth in this Article IV.G, all directors, managers, and other members of existing boards or governance bodies of the Debtors, as applicable, shall cease to hold office or have any authority from and after such time to the extent not expressly included in the roster of the New Board.

The New Board shall consist of seven (7) directors, consisting of (i) the Reorganized Company's Chief Executive Officer and (ii) six (6) directors designated by the Ad Hoc Group (the initial directors to be so designated in consultation with the Reorganized Company's Chief Executive Officer).  Each such director shall serve from and after the Effective Date pursuant to the terms of the applicable New Organizational Documents and other constituent documents of Reorganized Parent or All Day Holdings.

H.     *Employee Matters*

On the Effective Date, the Reorganized Company shall be deemed to have assumed all Employee Benefit Plans, and the obligations thereunder shall be paid in the ordinary course consistent with the terms thereof; provided, that the consummation of the Restructuring Transactions and any associated organizational changes shall not constitute a "change of control" or "change in control" under any Employee Benefit Plans.

As of the Effective Date, any provision of an Employee Benefit Plan that provides for equity-based awards, including any termination-related provisions with respect to equity-based awards, shall be deemed cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

The Reorganized Company shall continue to honor all retiree benefits in accordance with section 1129(a)(13) of the Bankruptcy Code, and the obligations thereunder shall be paid in accordance with the terms thereof.

I.     *Corporate Existence*

Except as otherwise provided in the Plan (including with respect to any Restructuring Transaction undertaken pursuant to the Plan), the New Organizational Documents, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each Debtor shall continue to exist as a Reorganized Debtor and as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of

32

incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

After the Effective Date, the Reorganized Debtors shall be authorized to dissolve the Debtors or the Reorganized Debtors in accordance with applicable law.  In the event the Purchase Transaction occurs, Holdings and Reorganized 24 Hour Worldwide shall be dissolved on or as promptly as practicable after the Effective Date.  Any such dissolution described in this Article IV.I may be effective as of the Effective Date pursuant to the Confirmation Order, without any further action by any shareholder, director, manager, or member of the Debtors.

J.      *Vesting of Assets in the Reorganized Company*

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, all Executory Contracts and Unexpired Leases assumed by any of the Debtors, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or the Confirmation Order.  On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

K.      *Cancellation of Existing Interests, Indebtedness, and Other Obligations*

Except as otherwise provided in the Plan, or any agreement, instrument, or other document incorporated in the Plan, or the Plan Supplement, on the Effective Date (i) the Prepetition Credit Agreement, the other Prepetition Loan Documents, the Senior Notes Indenture, the other Senior Notes Documents, the DIP Credit Agreement, the other DIP Documents, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be deemed cancelled, discharged and of no force or effect, except, with respect to the Prepetition Credit Agreement, the other Prepetition Loan Documents, the Senior Notes Indenture, the other Senior Notes Documents, the DIP Credit Agreement, and the other DIP Documents, as applicable, as necessary to (a) enforce the rights, claims and interests of the Prepetition Agent, the Senior Notes Trustee, or the DIP Agent, as applicable, and any predecessor thereof vis-a-vis parties other than the Released Parties; (b) allow the receipt of and to make distributions under the Plan in accordance with the terms of the Prepetition Credit Agreement, the Senior Notes Indenture, or the DIP Credit Agreement, as applicable; (c) preserve any rights of (1) the Prepetition Agent and any predecessor thereof as against any money or property distributable to Holders of Prepetition Credit Facility Claims,

33

including any priority in respect of payment and the right to exercise any charging liens, (2) the Prepetition Agent including rights of enforcement, of the Prepetition Agent against any person other than a Released Party (including the Debtors), including with respect to indemnification or contribution from the Prepetition Lenders pursuant and subject to the terms of the Prepetition Credit Agreement as in effect on the Effective Date, (3) the Senior Notes Trustee and any predecessor thereof as against any money or property distributable to Holders of Senior Notes Claims, including the Senior Notes Trustee's priority in respect of payment under section 6.10 of the Senior Notes Indenture and the right to exercise the Senior Notes Trustee's charging lien under section 7.06(d) of the Senior Notes Indenture, and (4) the DIP Agent and any predecessor thereof as against any money or property distributable to Holders of DIP Claims, including any priority in respect of payment and the right to exercise any charging liens; and (d) allow the Prepetition Agent, the Senior Notes Trustee, or the DIP Agent to appear and participate in the Chapter 11 Cases or any other proceeding with respect to clauses (a) through (c) above, as applicable, and any other proceedings or appeals related to the Plan; and (ii) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation, or similar documents governing the equity, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; provided, that notwithstanding confirmation or the occurrence of the Effective Date, any agreement that governs the rights of a Holder of a Claim shall also continue in effect to allow each of the Prepetition Agent, the Senior Notes Trustee, and the DIP Agent to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court to enforce the respective obligations owed to such parties under the Plan.

Except for the foregoing, (i) subject to the performance by the Prepetition Agent of its obligations under the Plan, the Prepetition Agent and its agents shall be relieved of all further duties and responsibilities related to the Prepetition Loan Documents upon the occurrence of the Effective Date (provided, that the Surviving Prepetition Credit Facility Provisions shall survive in accordance with the terms of the Prepetition Loan Documents); (ii) subject to the performance by the Senior Notes Trustee of its obligations under the Plan, the Senior Notes Trustee and its agents shall be relieved of all further duties and responsibilities related to the Senior Notes Documents upon the occurrence of the Effective Date (provided, that the Surviving Senior Notes Provisions shall survive in accordance with the terms of the Senior Notes Documents); and (iii) subject to the performance by the DIP Agent of its obligations under the Plan, the DIP Agent and its agents shall be relieved of all further duties and responsibilities related to the DIP Documents upon the occurrence of the Effective Date (provided, that the Surviving DIP Provisions shall survive in accordance with the terms of the DIP Documents).

The commitments and obligations (if any) of the Prepetition Lenders, Prepetition Agent, and/or any of the DIP Lenders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, or any of their respective successors or assigns under the Prepetition Credit Agreement or the DIP Documents, as applicable, shall fully terminate and be of no further force or effect on the Effective Date.

WEIL:\97709211\1\78028.0003

Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force and effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

L.      *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable (i) the issuance of the New Equity Interests; (ii) implementation of the Restructuring Transactions; (iii) incurrence of the New Debt; (iv) implementation of the Rights Offering; and (v) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Company, and any corporate or other organizational action required by the Debtors or the Reorganized Company, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Company.  Before, on, or after the Effective Date, as applicable, the appropriate officers of the Debtors and the Reorganized Company, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan), in the name of and on behalf of the Debtors or the Reorganized Company, as applicable, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Article IV.L shall be effective notwithstanding any requirements under non-bankruptcy law.  The foregoing does not extend to any equity holder or board actions required under applicable law with respect to AcquisitionCo and any affiliate of AcquisitionCo (including All Day Holdings).

M.      *Effectuating Documents; Restructuring Transactions*

        1.      Restructuring Transactions

Following the Confirmation Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Company, as applicable, with the consent of the Requisite Consenting Creditors (such consent not to be unreasonably withheld), may take all actions as may be necessary or appropriate in their discretion to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or

dissolution pursuant to applicable state or law; (iv) the issuance of securities; (v) if applicable, the Reorganized Parent Formation Merger, (vi) if applicable, the Purchase Transaction; and (vii) all other actions that the Debtors or the Reorganized Company determines to be necessary or appropriate, including in connection with making filings or recordings that may be required by applicable law in connection with the Plan, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule or the governing documents of the Debtors or the Reorganized Company (collectively, the "***Restructuring Transactions***"). The foregoing does not extend to any equity holder or board actions required under applicable law with respect to AcquisitionCo and any direct or indirect parent entity of AcquisitionCo (including All Day Holdings).

2.    Reorganized Parent Formation Merger

The Debtors shall implement the following transactions on or immediately after the Effective Date (absent electing to implement the Purchase Transaction) as part of the Reorganized Parent Formation Merger in the following order and in accordance with the Restructuring Transactions: (i) Reorganized 24 Hour Worldwide shall form New 24 Hour Parent; (ii) New 24 Hour Parent shall form New 24 Hour Worldwide LLC; (iii) Reorganized 24 Hour Worldwide shall merge with and into New 24 Hour Worldwide LLC, with New 24 Hour Worldwide LLC surviving, and pursuant to the merger, the New Common Equity Interests, New Preferred Equity Interest and Warrants in Reorganized 24 Hour Worldwide are exchanged for the identical interests in New 24 Hour Parent; and (iv) New 24 Hour Parent becomes a guarantor under and in accordance with the Exit Term Loan Facility.

3.    Purchase Transaction

In the event Debtors elect (on or before the Purchase Transaction Election Date) to implement the Purchase Transaction, the Debtors shall implement the Purchase Transaction as set forth in Exhibit B herein and in accordance with the Restructuring Transactions.

N.    *Rights Offering and Backstop Commitment Agreement*

1.    Rights Offering

Following approval by the Bankruptcy Court of the Disclosure Statement and the Rights Offering Procedures, one or more of the Debtors shall conduct the Rights Offering.  In accordance with the Subscription Agreement, the Rights Offering Backstop Commitment Agreement, and the Rights Offering Procedures, each Eligible DIP Claim Holder shall have Subscription Rights in the Rights Offering to purchase up to its pro rata allocation of the Rights Offering Amount, subject to the Rights Offering Holdback.

2.    Rights Offering Backstop Commitment Agreement

In accordance with the Rights Offering Backstop Commitment Agreement and subject to the terms and conditions thereof:

- each of the Commitment Parties shall (i) fully exercise all of its Subscription Rights and (ii) purchase its pro rata share of any unsubscribed Rights Offering Shares that

WEIL:\97709211\1\78028.0003

are not purchased by Eligible DIP Claim Holders that are not Commitment Parties as part of the Rights Offering; and

- in exchange for providing their respective Backstop Commitments, each Commitment Party will receive its respective allocation of the Backstop Commitment Premium.

O.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) any transfers (directly or indirectly) of property pursuant to the Plan or the Plan Supplement, including the Purchase Transaction, (iv) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (v) the grant of collateral under the Exit Credit Agreement, and (vi) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

P.    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Reorganized Company shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan, other than (1) Avoidance Actions, which shall be deemed released and waived as of the Effective Date, and (2) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived as of the Effective Date.

The Reorganized Company may pursue such Retained Causes of Action in accordance with the best interests of the Reorganized Company. The Reorganized Company shall retain and may exclusively enforce any and all such Retained Causes of Action. The Reorganized Company shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

WEIL:\97709211\1\78028.0003

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Reorganized Company shall not pursue any and all available Causes of Action against it, except as otherwise expressly provided in the Plan, including this Article IV and Article VIII of the Plan.** Unless any such Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, assigned, or settled in the Plan or a Final Order, all such Causes of Action shall be expressly reserved by the Reorganized Company for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or consummation of the Plan.

Q.    *Insurance Policies*

    1.    Director and Officer Liability Insurance

Notwithstanding anything in the Plan to the contrary:  (A) each D&O Liability Insurance Policy to which the Debtors are a party as of the Effective Date, shall be deemed an Executory Contract and shall be assumed by the Reorganized Company on behalf of the applicable Debtor pursuant to sections 105 and 365(a) of the Bankruptcy Code effective as of the Effective Date unless such D&O Insurance Policy (i) was rejected by the Debtors prior to the Confirmation Hearing pursuant to a Bankruptcy Court order or (ii) is the subject of a motion to reject pending on the date of the Confirmation Hearing; (B) coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies; and (C) after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies (including any "tail" policy) in effect or purchased as of the Petition Date for the full term of such policy, regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in the D&O Liability Insurance Policies.

    2.    Survival of Debtors' Indemnification Obligations

To the fullest extent permitted by applicable law, any obligations of the Debtors in place as of the Effective Date pursuant to their corporate charters, by-laws, limited liability company agreements, memoranda and articles of association, or other organizational documents and agreements to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors (collectively, the "**Indemnification Obligations**") shall not be discharged, impaired, or otherwise affected by the Plan; provided that the Debtors or the Reorganized Company shall not indemnify officers, directors, agents, or employees of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission that for which indemnification is barred under applicable law or that is excluded under the terms of the foregoing organizational documents or applicable agreements governing the Debtors' Indemnification Obligations; provided, further, that the Indemnifications Obligations shall only include such obligations to former direct and indirect directors, officers, managers, employees, attorneys, accountants, investment bankers, and other

professionals of the Debtors that were serving in such role from and after June 1, 2018. All Indemnification Obligations shall be deemed Executory Contracts assumed by the Reorganized Company under the Plan unless such obligation (i) was rejected by the Debtors pursuant to a Bankruptcy Court order or (ii) is the subject of a motion to reject pending on the date of the Confirmation Hearing.

 3.  Other Insurance Policies

 Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, any Plan Supplement, the Confirmation Order, the Restructuring Support Agreement, the Exit Facility Documents, any bar date notice or claim objection, any other document related to any of the foregoing, or the Confirmation Order:  (A) each of the Debtors' Insurance Policies are treated as Executory Contracts under the Plan, and unless otherwise provided in the Plan, on the Effective Date, each Insurance Policy to which the Debtors are a party as of the Effective Date shall be assumed by the Reorganized Company in their entirety pursuant to sections 105 and 365 of the Bankruptcy Code unless such Insurance Policy (i) was rejected by the Debtors prior to the Confirmation Hearing pursuant to a Bankruptcy Court order or (ii) is the subject of a motion to reject pending on the date of the Confirmation Hearing; (B) on and after the Effective Date, the Reorganized Company shall be liable for all debts, obligations, and liabilities of the Debtors (and, after the Effective Date, of the Reorganized Company) under the Insurance Policies, regardless of when such debts, obligations, and liabilities arise, without the need or requirement for any Insurer to file a proof of claim, an administrative claim, or a cure claim, or to object to any cure amount; (C) nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Restructuring Support Agreement, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening) (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of the Debtors' Insurance Policies, or (ii) alters or modifies the duty, if any, that the Insurers have to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors or the Reorganized Company or draw on any collateral or security therefor; (D) nothing shall alter, modify, amend, affect, impair, or prejudice the legal, equitable, or contractual rights, obligations, and defense of the Insurers, insureds, Debtors, and the Reorganized Company, as applicable, under the Insurance Policies in any manner, and such insurance carriers, insureds, Debtors, and the Reorganized Company, as applicable, shall retain all rights and defenses under such Insurance Policies, and such Insurance Policies shall apply to, and be enforceable by and against, the insureds and the Reorganized Company, as applicable, in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date; and (E) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (ii) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (a) workers' compensation claims, (b) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay to proceed with its claim, and (c) all costs in relation to each of the foregoing; (iii) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Company, as applicable), as permitted by Paragraph 50 of the DIP Order, at any

time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Company, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Company as applicable) under the applicable Insurance Policies, in accordance with the terms of the Insurance Policies; and (iv) the Insurers to take any other actions relating to the Insurance Policies (including effectuating a setoff), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the Insurance Policies.

R.      *Management Incentive Plan*

On or after the Effective Date (and in the event of the Purchase Transaction, in accordance with the Acquisition Agreement), the Management Incentive Plan shall be established by the New Board pursuant to the terms of the Management Incentive Plan Term Sheet.

S.      *Membership Agreements*

Each Membership Agreement to which the Debtors are a party as of the Effective Date shall be deemed an Executory Contract and shall be assumed by the Reorganized Company on behalf of the applicable Debtor effective as of the Effective Date unless such Membership Agreement was terminated pursuant to its terms.  Any Cure Claims with respect to Membership Agreements shall be satisfied in kind in the ordinary course of the Reorganized Company's business through dues credits, extension of membership terms, or otherwise, as applicable.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically designated on the Assumption Schedule filed with the Plan Supplement; (ii) is subject to a motion to assume such Executory Contract or Unexpired Lease on or before the Confirmation Date; (iii) is a D&O Liability Insurance Policy; (iv) is an Employee Benefit Plan; (v) is a Membership Agreement; or (vi) is deemed assumed pursuant to Article IV.H, Article IV.Q, or Article IV.S of the Plan.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumption Schedule, and the Rejection Schedule pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Reorganized Company has provided adequate assurance of future performance under such assumed Executory Contracts and Unexpired Leases; provided, however, that any assumption of an Executory Contract or Unexpired Lease is further subject to the resolution of any Assumption Dispute in accordance with Article V.D of the Plan and payment of the applicable Cure Claim, if any.  Except as otherwise specifically set forth herein or in the Confirmation Order, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

Subject to applicable law, including section 365(d)(4) of the Bankruptcy Code, any motions to assume or assume and assign Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Company with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date. For the avoidance of doubt, any Unexpired Lease of real property not assumed prior to entry of the Confirmation Order shall be deemed rejected as of the Confirmation Date absent consent of the applicable lessor.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. The consummation of the Plan and the implementation of the Restructuring Transactions are not intended to, and shall not, constitute a "change of control" or "change in control" under any lease, contract, or agreement to which a Debtor is a party.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Bankruptcy Court by the later of thirty (30) days from (i) the date of entry of an order of the Bankruptcy Court approving such rejection, (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease, and (iii) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time shall be Disallowed pursuant to the Confirmation Order, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors or the Reorganized Company, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Company, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary**. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and may be objected to in accordance with the provisions of <u>Article VII.E</u> of the Plan and applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Except as set forth below, any Cure Claims shall be satisfied for the purposes of section 365(b)(1) of the Bankruptcy Code by payment in Cash, on the Effective Date, or as soon as reasonably practicable thereafter, of the cure amount set forth on the Assumption Schedule for the applicable Executory Contract or Unexpired Lease, or on such other terms as the parties to such Executory Contracts or Unexpired Leases and the Debtors may otherwise agree. Any Cure Claim

WEIL:\97709211\1\78028.0003

shall be deemed fully satisfied, released, and discharged upon the payment of the Cure Claim. The Debtors may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Any party that fails to object to the applicable cure amount listed on the Assumption Schedule within ten (10) calendar days of the filing thereof shall be forever barred, estopped, and enjoined from disputing the cure amount set forth on the Assumption Schedule (including a cure amount of $0.00) and/or from asserting any Claim against the applicable Debtor or Reorganized Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Assumption Schedule.

The Debtors reserve the right to amend the Assumption Schedule to add or remove any Executory Contract or Unexpired Lease; provided, that any affected counterparty whose Executory Contract or Unexpired Lease is newly added to the Assumption Schedule will have until the earlier of (i) seven (7) days from filing and service of the amended Assumption Schedule and (ii) the Confirmation Hearing to object to assumption and/or proposed cure amount; provided, further, that the Debtors may amend the Assumption Schedule to add or delete any Executory Contracts or Unexpired Leases at any time prior to the entry of the Confirmation Order to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any such Executory Contract or Unexpired Lease at any time before the date that the Debtors assume or assume and assign such Executory Contract or Unexpired Lease. Notwithstanding anything herein to the contrary, upon assumption of an Unexpired Lease, the Debtors or Reorganized Debtors, as applicable, shall be obligated to pay any accrued but unbilled amounts under the Unexpired Lease including, but not limited to, common area maintenance charges, taxes, year-end adjustments, and indemnity obligations under the Unexpired Lease, regardless of whether a claim arose before or after the Petition Date. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Dispute Resolution*

In the event of a timely filed objection regarding (i) the amount of any Cure Claim; (ii) the ability of the Debtors or the Reorganized Company to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under an Executory Contract or Unexpired Lease to be assumed; or (iii) any other matter pertaining to assumption or the cure of defaults required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors and the counterparty to the Executory Contract or Unexpired Lease.

To the extent an Assumption Dispute relates solely to the amount of a Cure Claim, the Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of such Assumption Dispute; provided that the Debtors reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by

the party or parties to such Executory Contract or Unexpired Lease.  To the extent that the Assumption Dispute is resolved or determined unfavorably to the Debtors, the Debtors may reject the applicable Executory Contract after such determination.  For the avoidance of doubt, Unexpired Leases may not be rejected after entry of the Confirmation Order.

For the avoidance of doubt, if the Debtors are unable to resolve an Assumption Dispute relating solely to the amount of a Cure Claim prior to the Confirmation Hearing, such Assumption Dispute may be scheduled to be heard by the Bankruptcy Court after the Confirmation Hearing (an "***Adjourned Cure Dispute***"); provided, that the Reorganized Company may settle any Adjourned Cure Dispute after the Effective Date without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

E.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests in favor of the Debtors, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.      *Reservation of Rights*

Neither the inclusion of any Executory Contract or Unexpired Lease on the Debtors' Schedules, the Assumption Schedule, or the Rejection Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or, after the Effective Date, the Reorganized Company shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      *Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4)*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases of nonresidential real property pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or, with respect to General Unsecured Claims and Membership Agreement Claims, the Initial Unsecured Claims Distribution Date, or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date or, with respect to General Unsecured Claims and Membership Agreement Claims, the Initial Unsecured Claims Distribution Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), the Distribution Agent shall make initial distributions under the Plan on account of each Allowed Claim or Allowed Interest in the amount that the Plan provides.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in <u>Article VII</u> of the Plan.  Except as specifically provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan; <u>provided</u>, <u>that</u> Claims held by a single entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor.  Any such Claims shall be released pursuant to <u>Article VIII</u> of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.  For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

B.    *Rights and Powers of Distribution Agent*

The Distribution Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

    1.    Record Date for Distribution

        On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled, but not required, to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date, unless otherwise set forth in the DIP Order or the DIP Documents.

    2.    Delivery of Distributions

        Subject to Bankruptcy Rule 9010, all distributions to any Holder or permitted designee, as applicable, of an Allowed Claim or Allowed Interest shall be made to the Distribution Agent, who shall transmit such distribution to the applicable Holders or permitted designees of Allowed Claims or Allowed Interests on behalf of the applicable Debtors.  In the event that any distribution to any Holder or permitted designee is returned as undeliverable, no further distributions shall be made to such Holder or such permitted designee unless and until the Distribution Agent is notified in writing of such Holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Distribution Agent to attempt to locate Holders or permitted designees, as applicable, of undeliverable distributions.

        Notwithstanding the foregoing, all distributions of Cash on account of Prepetition Credit Facility Claims or DIP Claims, if any, shall be deposited with the Prepetition Agent and the DIP Agent, as applicable, for distribution to Holders of Prepetition Credit Facility Claims or DIP Claims in accordance with the terms of the Prepetition Credit Agreement and the DIP Credit Agreement, as applicable.  All distributions other than of Cash on account of Prepetition Credit Facility Claims or DIP Claims, if any, may, with the consent of the Prepetition Agent and the DIP Agent, as applicable, be made by the Distribution Agent directly to Holders of Prepetition Credit Facility Claims and DIP Claims in accordance with the terms of the Plan, the Prepetition Credit Agreement, and the DIP Credit Agreement, as applicable.  Notwithstanding the foregoing, all distributions (whether of Cash or other than of Cash) on account of Senior Notes Claims, if any, shall be deposited with the Senior Notes Trustee for distribution to Holders of Senior Notes Claims in accordance with the terms of the Senior Notes Indenture, except to the extent that the Senior Notes Trustee provides prior written consent to the Debtors that some or all of such distributions may be made by the Distribution Agent directly to Holders of Senior Notes Claims in accordance with the terms of the Plan and the Senior Notes Indenture.  To the extent the Prepetition Agent, the Senior Notes Trustee, or the DIP Agent effectuates, or is requested to effectuate, any distributions hereunder, the Prepetition Agent, the Senior Notes Trustee, and the DIP Agent shall be deemed a "Distribution Agent" for purposes of the Plan.

        Except as otherwise provided herein, on the Initial Unsecured Claims Distribution Date, the Distribution Agent shall make distributions to Holders of Allowed General Unsecured Claims and Allowed Membership Agreement Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided, that the address for each Holder of an Allowed General Unsecured Claim

WEIL:\97709211\1\78028.0003

and an Allowed Membership Agreement Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder or the address provided to the Distribution Agent by the Holder in writing after the Effective Date or, if no Proof of Claim has been filed, the address set forth in the Schedules.  If a Holder holds more than one Claim in any one Class, with the exception of Class 5 (Membership Agreement Claims), all Claims of the Holder will be aggregated into one Claim, and one distribution will be made with respect to the aggregated Claim.

The amount of any reasonable and documented fees and expenses incurred by the Prepetition Agent, the Senior Notes Trustee, and the DIP Agent in connection with making distributions (including, without limitation, reasonable attorneys' fees and other professional fees and expenses) shall be paid in Cash by the Reorganized Company and will not be deducted from distributions made to Holders of Prepetition Credit Facility Claims, Senior Notes Claims, or DIP Claims, as applicable.  The foregoing reasonable and documented fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Reorganized Company and without the need for approval by the Bankruptcy Court.

All securities to be distributed under the Plan shall be issued in the names of such holders or their nominees in accordance with DTC's book-entry exchange procedures or on the books and records of a transfer agent, as determined by the Debtors or the Reorganized Debtors, as applicable.

3.      No Fractional Shares

No fractional shares or units of New Equity Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim otherwise would result in the issuance of shares or units of New Equity Interests that is not a whole number, such New Equity Interests shall be rounded as follows: (i) fractions of greater than one-half shall be rounded to the next higher whole number and (ii) fractions of one-half or less shall be rounded to the next lower whole number with no further payment on account thereof.  The total number of authorized and/or issued shares or units of New Equity Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the time of such distribution.  After such date, all unclaimed property or interests in property shall be redistributed Pro Rata as provided under the Plan (it being understood that, for purposes of this Article VI.C.4, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed), except for such unclaimed New Equity Interests, which shall be cancelled, and all other unclaimed property or interests in property shall revert to and vest in the Reorganized Company without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the

WEIL:\97709211\1\78028.0003

contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

A distribution shall be deemed unclaimed if a Holder has not (i) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (ii) given notice to the Distribution Agent of an intent to accept a particular distribution; (iii) responded to the Distribution Agent's requests for information necessary to facilitate a particular distribution; or (iv) taken any other action necessary to facilitate such distribution.

D.    *Securities Registration Exemption*

The issuance and distribution under the Plan of the (i) New Common Equity Interests to Holders of Allowed Prepetition Credit Facility Claims and Holders of Allowed DIP Claims and (ii) the Warrants to Holders of Allowed General Unsecured Claims shall, in each case, be exempt from registration under the Securities Act or any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code.

The offer, issuance, and sale under the Plan of the New Preferred Equity Interests pursuant to the Rights Offering (other than the Rights Offering Holdback Shares) shall be exempt from registration under the Securities Act or any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code or section 4(a)(2) of the Securities Act and/or Regulation D thereunder.

The issuance and sale under the Plan of the New Preferred Equity Interests constituting the Backstop Commitment Premium and the Rights Offering Holdback Shares shall be exempt from registration under the Securities Act or any other applicable securities laws to the fullest extent permitted by section 4(a)(2) of the Securities Act and/or Regulation D thereunder.

With respect to the foregoing securities issued in reliance on the exemption from registration set forth in section 4(a)(2) of the Securities Act and/or Regulation D thereunder, such securities will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 of the Securities Act.  With respect to the foregoing securities issued pursuant to section 1145(a) of the Bankruptcy Code, such securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  In addition, such section 1145 exempt securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

None of the Debtors, the Reorganized Company, or any other Person shall be required to provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Equity Interests, the New Preferred Equity Interests, or the Warrants, under applicable securities laws.  DTC and any transfer agent (as applicable) shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Common Equity Interests, the New Preferred Equity Interests,

WEIL:\97709211\1\78028.0003

or the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services (to the extent applicable).

Notwithstanding anything to the contrary in this Plan, no Person (including DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Common Equity Interests, the New Preferred Equity Interests, or the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

E.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Distribution Agent and Reorganized Company, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  In the case of a Plan Distribution that is subject to withholding, the distributing party may request a holder of an Allowed Claim or Allowed Interest to complete and return a Form W-8 or W-9, as applicable to each such holder, and any other applicable forms.  Notwithstanding any provision in the Plan to the contrary, the Distribution Agent and Reorganized Company, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, requiring the intended recipient of such distribution to provide an amount of Cash sufficient to satisfy such withholding tax or establishing any other mechanisms they believe are reasonable and appropriate.  If an intended recipient of a Plan Distribution has agreed to provide the Distribution Agent or Reorganized Company, as applicable, with the Cash necessary to satisfy the withholding tax pursuant to this section and such person fails to comply before the date that is 180 days after the request is made, the amount of such Plan Distribution that was not distributed shall irrevocably revert to the applicable Reorganized Debtor and such Claim in respect of such Plan Distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.  Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the above, each Holder of an Allowed Claim or Allowed Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.  The Distribution Agent reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F.    *Allocations*

Unless otherwise required by law (as reasonably determined by the Debtors), distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of such Claims, including any portion of such Claims for accrued but unpaid interest as Allowed herein.

G.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

H.    *Setoffs and Recoupment*

Except as otherwise expressly provided herein, the Debtors or the Reorganized Company, as applicable, may, but shall not be required to, set off against or recoup from any claims of any nature whatsoever that the Debtors or the Reorganized Company may have against the Holder, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Company of any such claim they may have against the Holder of such Claim.  In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Company, as applicable, unless (i) the Debtors have consented (which consent shall not be unreasonably withheld) and (ii) such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.  Notwithstanding anything herein to the contrary, neither the Reorganized Company nor the Debtors may set off and/or recoup against any distributions made on account of any Prepetition Credit Facility Claims, Senior Notes Claims, or DIP Claims or any distributions to be made to parties to the Restructuring Support Agreement.

Notwithstanding anything to the contrary herein, nothing shall modify the rights, if any, of any holder of Claims or any current or former party to an Executory Contract or Unexpired Lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, the Reorganized Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Reorganized Debtors, the Estates, or any successors of the Debtors, as applicable.

I.    *Claims Paid or Payable by Third Parties*

1.    <u>Claims Paid by Third Parties</u>

A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, the Reorganized Company, or the Distribution Agent.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, the Reorganized Company, or the Distribution Agent on account of such Claim, such Holder shall repay, return or deliver any

distribution held by or transferred to the Holder to the Debtor, the Reorganized Company, or the Distribution Agent to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  In the event such Holder fails to timely repay or return such distribution, the Debtors or the Reorganized Company may pursue any rights and remedies against such Holder under applicable law.

2.      Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' Insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' satisfaction, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, payments to Holders of Claims shall be in accordance with the provisions of any applicable Insurance Policy and subject to the terms thereof.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,**
**AND DISPUTED CLAIMS**

A.      *Allowance of Claims and Interests*

After the Effective Date, the Reorganized Company shall have and retain any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order, Allowing such Claim or Interest.

B.      *Claims and Interests Administration Responsibilities*

Except as otherwise expressly provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Company shall have the authority (i) to file, withdraw, or litigate to judgment objections to Claims or Interests; (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and

adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Reorganized Company shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Disputed Interest, including the Retained Causes of Action.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Reorganized Company, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed, contingent, or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Reorganized Company, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) calendar days after the date on which such Claim or Interest is estimated. All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Register Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Company upon stipulation between the parties in interest without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

The Debtors and the Reorganized Company, as applicable, shall exclusively be entitled to object to Claims. After the Effective Date, except as expressly provided herein to the contrary, the Reorganized Company shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Any objections to proofs of Claim and requests for payment of Administrative Claims shall be served and filed on or before the later of (a) 180 days after the Effective Date and (b) on such later date as may be fixed by the Bankruptcy Court, after notice and an opportunity for a

hearing, upon a motion by the Reorganized Company that is filed before the date that is 180 days after the Effective Date. The expiration of such period shall not limit or affect the Debtors' or the Reorganized Company's rights to dispute Claims asserted in the ordinary course of business other than through a proof of Claim.

F.    *Disallowance of Claims*

All Claims filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

G.    *Amendments to Claims*

On or after the Claims Bar Date and Administrative Claims Bar Date, as applicable, except as provided in the Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Company. Absent such authorization, any new or amended Claim filed after the Claims Bar Date and Administrative Claims Bar Date, as applicable, shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

H.    *Disputed Claims Reserve*

Any amounts or property that would be distributable in respect of any Disputed General Unsecured Claim had such Disputed General Unsecured Claim been Allowed on the Effective Date, together with all earnings thereon (net of any taxes imposed thereon or otherwise payable by the Disputed Claims Reserve), as applicable, shall be deposited in the Disputed Claims Reserve. The amount of, or the amount of property constituting, the Disputed Claims Reserve shall be determined prior to the Confirmation Hearing, based on the Debtors' good faith estimates or an order of the Bankruptcy Court estimating such Disputed Claims, and shall be established on or about the Effective Date.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtors, the Reorganized Debtors, the Disbursing Agent, and the holders of Disputed General Unsecured Claims) shall be required to report for tax purposes consistently with the foregoing.

The Disputed Claim Reserve shall be responsible for payment, out of the assets of the Disputed Claim Reserve, of any taxes imposed on the Disputed Claim Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claim Reserve (e.g., the Warrants) may be sold to pay such taxes.

To the extent that a Disputed General Unsecured Claim becomes an Allowed Claim after the Effective Date, the Disbursing Agent shall distribute to the holder thereof out of the Disputed Claims Reserve any amount or property to which such holder is entitled hereunder (net of any allocable taxes imposed thereon or otherwise incurred or payable by the Disputed Claims Reserve, including in connection with such distribution). No interest shall be paid with respect to any Disputed Claim that becomes an Allowed Claim after the Effective Date.

In the event the remaining assets of the Disputed Claims Reserve are insufficient to satisfy all the Disputed General Unsecured Claims that have become Allowed, such Allowed General Unsecured Claims shall be satisfied pro rata from such remaining assets. After all assets have been distributed from the Disputed Claims Reserve, no further distributions shall be made in respect of Disputed General Unsecured Claims. At such time as all Disputed General Unsecured Claims have been resolved, any remaining assets in the Disputed Claims Reserve shall be distributed Pro Rata to all holders of Allowed General Unsecured Claims.

The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Disputed Claims Reserve for all taxable periods through the date on which final distributions are made.

I.      *Distributions After Allowance*

As soon as reasonably practicable after the date that the order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Reorganized Company shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable nonbankruptcy law.

J.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed one-hundred percent (100%) of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims,

WEIL:\97709211\1\78028.0003

Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Company may compromise and settle Claims against, and Interests in, the Debtors and their Estates and the Retained Causes of Action.

B.    *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan (including with respect to Claims that are Reinstated by the Plan) or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan. Any default or "*event of default*" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, and, upon the Effective Date, all Holders of such Claims and Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim or Interest against the Debtors, the Reorganized Company, or any of their Assets or property.

C.    *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors, and each of their respective current and former Affiliates, on behalf of themselves and their respective Estates, including any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, including the Reorganized Company, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that**

may be asserted on behalf of the Debtors and their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the DIP Documents, the Restructuring Support Agreement, the Plan (including the Exit Facility Documents and the Plan Supplement), the Disclosure Statement, the Restructuring Transactions, the Rights Offering, the Rights Offering Procedures, the New Debt, the Prepetition Loan Documents, the Senior Notes Documents, the prepetition and postpetition marketing process, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article VIII.C shall not be construed as releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any assumed Unexpired Lease or Executory Contract, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including, without limitation, the Rights Offering Procedures, the Exit Facility Documents, and the New Organizational Documents.

D.      *Releases by Holders of Claims and Interests*

As of the Effective Date, except (i) for the right to enforce the Plan or (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, the Released Parties shall be deemed expressly, conclusively, absolutely, unconditionally, irrevocably and forever, released, waived, and discharged by the Releasing Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims asserted or that may be asserted on behalf of the Debtors and their Estates), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the DIP Documents, the Restructuring Support Agreement, the Plan (including the Exit Facility Documents and the Plan Supplement), the Disclosure Statement, the Restructuring Transactions, the Rights Offering, the Rights Offering Procedures, the New Debt, the Prepetition Loan Documents, the Senior Notes Documents, the prepetition and postpetition marketing process, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other

WEIL:\97709211\1\78028.0003

occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing,  the releases set forth in this Article VIII.D of the Plan shall not be construed as releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including, without limitation, the Rights Offering Procedures, the Exit Facility Documents, and the New Organizational Documents.

E.    *Exculpation*

Without affecting or limiting the releases set forth in Article VIII.C and Article VIII.D of the Plan, and notwithstanding anything herein to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the DIP Documents, the Restructuring Support Agreement, the Plan (including the Exit Facility Documents and the Plan Supplement), the Disclosure Statement, the Restructuring Transactions, the Right Offering, the Rights Offering Procedures, the New Debt, the Prepetition Loan Documents, the Senior Notes Documents, the prepetition and postpetition marketing process, the formulation, preparation, dissemination, negotiation of any of the foregoing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of confirmation of the Plan, the solicitation of votes on the Plan, or participation in the New Debt and the Rights Offering, the pursuit of consummation of the Effective Date, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in this Article VIII.E of the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including,

**without limitation, the Rights Offering Procedures, the Exit Facility Documents, and the New Organizational Documents.**

F.    *Injunction*

UPON ENTRY OF THE CONFIRMATION ORDER, ALL HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES IN INTEREST, ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES SHALL BE ENJOINED FROM TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN IN RELATION TO ANY CLAIM EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST (OTHER THAN CLAIMS THAT ARE REINSTATED UNDER THE PLAN), ALONG WITH THEIR RESPECTIVE PRESENT OR FORMER EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, PRINCIPALS, AFFILIATES, AND RELATED PARTIES, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED COMPANY, THE RELEASED PARTIES, OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO ARTICLE VIII.E OF THE PLAN WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; PROVIDED,

HOWEVER, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH ENTITIES FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS HEREOF AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN.

BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR ALLOWED INTEREST EXTINGUISHED, DISCHARGED, OR RELEASED PURSUANT TO THE PLAN WILL BE DEEMED TO HAVE AFFIRMATIVELY AND SPECIFICALLY CONSENTED TO BE BOUND BY THE PLAN, INCLUDING, WITHOUT LIMITATION, THE INJUNCTIONS SET FORTH IN THIS ARTICLE VIII.F.

THE INJUNCTIONS IN THIS ARTICLE VIII.F SHALL EXTEND TO ANY SUCCESSORS OF THE DEBTORS, THE REORGANIZED COMPANY, THE RELEASED PARTIES, AND THE EXCULPATED PARTIES AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY.

G.    *Subordination Rights*

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise that a Holder of a Claim or Interest may have against other Holders of Claims or Interests with respect to any distribution made pursuant to the Plan.  Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

H.    *Release of Liens*

Except (i) with respect to the Liens securing the New Debt or (ii) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Company, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Company and its successors and assigns.  On and after the Effective Date, the Reorganized Company (and any of its respective agents, attorneys or designees) shall be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, intellectual property assignments, mortgage or deed of trust releases or such other forms or release documents as may be necessary or appropriate to evidence such releases and implement the provisions of this Article VIII.H.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or occur in conjunction with the occurrence of the Effective Date (or shall be waived pursuant to Article IX.B of the Plan):

1.      the Bankruptcy Court shall have entered the Confirmation Order, which shall be materially consistent with the Restructuring Support Agreement and otherwise reasonably acceptable to the Debtors and the Requisite Consenting Creditors, shall not have been stayed, and shall authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan;

2.      the Restructuring Support Agreement shall remain in full force and effect.

3.      the Plan Supplement and all material schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Restructuring Support Agreement and the Plan;

4.      in the event of a Purchase Transaction, all conditions precedent to the closing of such sale under the Acquisition Agreement, other than the effectiveness of the Plan, shall have been satisfied or waived in accordance with the terms thereof;

5.      all necessary actions, documents, certificates, and agreements necessary to implement the Plan on the Effective Date shall have been effected or executed and delivered to the required parties;

6.      the Professional Fee Escrow shall have been established and funded in Cash in accordance with Article II.C.2 of the Plan; and

7.      the Debtors shall have obtained all governmental authorizations, consents, approvals, or rulings that are necessary to implement and effectuate the Plan, including but not limited to the Rights Offering, the Exit Term Loan Facility, and the Restructuring Transactions;

provided, that, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; provided, further, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

B.      *Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in this Article IX may be waived only by the Debtors, with the consent of the Requisite Consenting Creditors (such consent not to

WEIL:\97709211\1\78028.0003

be unreasonably withheld), as applicable, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan, subject to the terms of the Bankruptcy Code and the Bankruptcy Rules.

C.      *Substantial Consummation*

"Substantial consummation" of the Plan, as defined by section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect.

### ARTICLE X.
### MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

The Debtors, with the consent of (i) the Requisite Consenting Creditors (which consent shall not be unreasonably withheld, conditioned, or delayed), (ii) solely with respect to matters affecting the DIP Agent and/or the DIP Lenders, the Required DIP Lenders (such consent not to be unreasonably withheld, conditioned, or delayed), and (iii) solely with respect to matters affecting the Prepetition Agent, the Prepetition Agent (such consent not to be unreasonably withheld, conditioned, or delayed), as applicable, reserve the right to modify the Plan and seek confirmation of the Plan consistent with the Bankruptcy Code and the Bankruptcy Rules and, as appropriate, not resolicit votes on such modified Plan.    Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtors, with the consent of (a) the Requisite Consenting Creditors (which consent shall not be unreasonably withheld, conditioned, or delayed), (b) solely with respect to matters affecting the DIP Agent and/or the DIP Lenders, the Required DIP Lenders (such consent not to be unreasonably withheld, conditioned, or delayed), and (c) solely with respect to matters affecting the Prepetition Agent, the Prepetition Agent (such consent not to be unreasonably withheld, conditioned, or delayed), as applicable, expressly reserve their rights to alter, amend, or modify materially the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.    Notwithstanding the foregoing, any modifications to the Plan with respect to the Warrants or the treatment of General Unsecured Claims under the Plan shall constitute a material modification of the Plan and require the consent of the Creditors' Committee (such consent not to be unreasonably withheld) with respect to any such modification

WEIL:\97709211\1\78028.0003

of the Plan before Confirmation and shall be subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan or if confirmation and consummation of the Plan do not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims or the non-Debtor subsidiaries, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests; provided, that for the avoidance of doubt, the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors or the Reorganized Company, as applicable, from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to (i) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner (whether through amendment of the Assumption Schedule

or Rejection Schedule or otherwise) and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease and (ii) any dispute regarding whether a contract or lease is or was executory or unexpired;

4.      adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action related to the Chapter 11 Cases;

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, injunctions, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.I of the Plan;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

15.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order, in each case, in accordance with the Restructuring Support Agreement;

17.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

19.     hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

20.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan;

21.     enforce all orders previously entered by the Bankruptcy Court;

22.     hear any other matter not inconsistent with the Bankruptcy Code and the Judicial Code;

23.     enter an order concluding or closing the Chapter 11 Cases;

24.     recover all assets of the Debtors and property of the Debtors' Estates, wherever located, and

25.     enforce the compromise, settlement, discharge, injunction, release, and exculpation provisions set forth in Article VIII of the Plan.

Notwithstanding the foregoing, the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court, and any disputes concerning documents contained in the Plan Supplement that contain such clauses shall be governed in accordance with the provisions of such documents.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, on the Effective Date, upon the effectiveness of the Plan, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors and the Reorganized Company, as applicable,

WEIL:\97709211\1\78028.0003

and any and all Holders of Claims or Interests (regardless of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, the Confirmation Order and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees*

All fees due and payable pursuant to section 1930(a) of the Judicial Code prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  On and after the Effective Date, the Reorganized Company shall pay any and all such fees in full in Cash when due and payable and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order in accordance with Article IX.A of the Plan. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any other party, including the Released Parties, with respect to the Holders of Claims or Interests or any other matter prior to the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, Related Party, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

WEIL:\97709211\1\78028.0003

F.      *Service of Documents*

       Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Company and the Ad Hoc Group shall be served on:

| | |
|---|---|
| Debtors: | 24 Hour Fitness Worldwide, Inc.<br>12647 Alcosta Boulevard<br>Suite 500<br>San Ramon, California 94583<br>Attn: Dean Myatt, Esq.<br>dmyatt@24hourfit.com |
| | <u>with copies to</u>: |
| Counsel to Debtors: | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn: Ray C. Schrock, P.C., Ryan Preston Dahl, Kevin Bostel, and Kyle R. Satterfield<br>Ray.Schrock@weil.com<br>Ryan.Dahl@weil.com<br>Kevin.Bostel@weil.com<br>Kyle.Satterfield@weil.com |
| | - and - |
| | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street<br>17th Floor<br>Wilmington, Delaware 19801<br>Attn: Laura Davis Jones, Timothy P. Cairns, and Peter J. Keane<br>LJones@pszjlaw.com<br>TCairns@pszjlaw.com<br>PKeane@pszjlaw.com |
| Counsel to the<br>Ad Hoc Group: | O'Melveny & Myers LLP<br>7 Times Square<br>New York, New York 10036<br>Attn: John J. Rapisardi, Daniel S. Shamah, and Diana Perez<br>JRapisardi@omm.com<br>DShamah@omm.com<br>DPerez@omm.com |
| | - and - |

WEIL:\97709211\1\78028.0003

|  | Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Attn: Mark D. Collins, Michael J. Merchant,<br>and David T. Queroli<br>collins@rlf.com<br>merchant@rlf.com<br>queroli@rlf.com |
|---|---|
| Counsel to the<br>Creditors' Committee: | Cooley LLP<br>55 Hudson Yards<br>New York, New York 10001<br>Attn: Cathy Hershcopf, Michael Klein, and<br>Lauren A. Reichardt<br>CHershcopf @cooley.com<br>MKlein@cooley.com<br>LReichardt@cooley.com<br><br>- and -<br><br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, Delaware 19801<br>Attn: Eric J. Monzo and Brya M. Keilson<br>emonzo@morrisjames.com<br>bkeilson@morrisjames.com |

G.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

The Plan, Plan Supplement, Confirmation Order, and the Restructuring Support Agreement (assumption of which agreements is approved by the Confirmation Order) supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

WEIL:\97709211\1\78028.0003

I.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, at the request of the Debtors with the consent of the Requisite Consenting Creditors (such consent not to be unreasonably withheld), which request shall be consistent with the terms of the Restructuring Support Agreement, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be reasonably acceptable to (x) the Debtors and (y) the Requisite Consenting Creditors.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii)  integral to the Plan and may not be deleted or modified without consent (such consent not to be unreasonably withheld, conditioned, or delayed) from (x) the Debtors and (y) the Requisite Consenting Creditors; and (iii) nonseverable and mutually dependent.

J.      *Dissolution of Committee*

On the Effective Date, any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve; provided that following the Effective Date, any such committees, including the Creditors' Committee, shall continue in existence solely for the purpose of filing and prosecuting applications for allowance of Professional Fee Claims.  Upon the dissolution of any official committees appointed in the Chapter 11 Cases, including the Creditors' Committee, such committee members and their respective Professionals shall cease to have any duty, obligation, or role arising from or related to the Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

K.      *Expedited Tax Determination*

The Debtors and Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed or to be filed for or on behalf of the Debtors for all taxable periods ending after the Petition Date through the Effective Date.

WEIL:\97709211\1\78028.0003

Respectfully submitted, as of November 16, 2020

24 Hour Holdings II LLC
24 Hour Fitness Worldwide, Inc.
24 Hour Fitness United States, Inc.
24 Hour Fitness USA, Inc.
24 Hour Fitness Holdings LLC
24 San Francisco LLC
24 New York LLC
24 Denver LLC
RS FIT Holdings LLC
RS FIT CA LLC
RS FIT NW LLC


By:      /s/  Daniel Hugo
Name:   Daniel Hugo
Title:      Authorized Officer

WEIL:\97709211\1\78028.0003